## GLEASON v. THAW.

### (Circuit Court of Appeals, Third Circuit. February 24, 1911.)

### No. 51 (1,371).

**1.** PROPERTY (§ 2*)—SUBJECT—SERVICES.

While the right to labor or to practice a profession may be considered a property right for the purpose of protection, services already rendered by one person for another are not "property," for the purpose of enlarging or changing the ordinary remedies by which the indebtedness therefor may be recovered.

[Ed. Note.—For other cases, see Property, Dec. Dig. § 2.*

. For other definitions, see Words and Phrases, vol. 6, pp. 5693–5728; vol. 8, pp. 7768–7770.]

**2.** BANKRUPTCY (§ 426*)—DISCHARGEABLE DEBTS—LIABILITIES FOR PROPERTY OBTAINED BY FRAUD—"PROPERTY."

Inducing the rendition of legal services by false representations is not the obtaining of "property" by false representations, within the meaning of Bankr. Act July 1, 1898, c. 541, § 17a (2) 30 Stat. 550 (U. S. Comp. St. 1901. p. 3428), as amended by Act Feb. 5, 1903, c. 487, § 5, 32 Stat. 798 (U. S. Comp. St. Supp. 1909, p. 1310), excepting liabilities for property so obtained from the provable debts dischargeable in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 787–807; Dec. Dig. § 426.*]

On Petition for Review of Order of the District Court of the United States for the Western District of Pennsylvania.

In the matter of Harry Kendall Thaw, bankrupt. On petition to revise an order of the District Court. Affirmed.

Houston, Frew & Wilson and John B. Gleason, for petitioner.
Stone & Stone, for trustee.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

GRAY, Circuit Judge. This is a petition to review, under section 24(b) of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432]), a final order of the District Court of the United States for the Western District of Pennsylvania, in bankruptcy, staying an action brought by the petitioner against the bankrupt.

The petition recites the fact that the petitioner, John B. Gleason, brought an action in 1908, in the Circuit Court of the United States

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for the Southern District of New York, which was stayed by the court below, sitting in bankruptcy, and upon a petition for review of that order, the same was affirmed by this court (Gleason v. O'Mara, 180 Fed. 417, 103 C. C. A. 563); that thereupon that action was discontinued, and another action was commenced in the said Circuit Court for the Southern District of New York, on the 8th day of December, 1909, wherein the petitioner was plaintiff and Henry Kendall Thaw, bankrupt, was defendant. The cause of action set forth in this new suit is in the same form and based upon the same facts as those set forth in the prior suit. It is asserted, however, in the complaint, that the services rendered, and for which compensation was sought, were property 'obtained from the said plaintiff by the said defendant by false pretenses or false representations.

The complainant sets out at great length his interviews with the defendant, Thaw, in which are alleged to have occurred the false pretenses and representations by which the plaintiff was afterwards induced to engage his services for one year as leading counsel for the said defendant in relation to the defendant's impending trial under indictment for murder. He also alleges that thirty thousand dollars was paid to the plaintiff by the said defendant, as his chief counsel, to be used in his discretion for the general purposes of his defense, and that out of this sum the plaintiff made certain disbursements, for the defendant and at his request, amounting to the sum of $10,115.

The petition of Harry K. Thaw, the bankrupt, to the said District Court for the Western District of Pennsylvania, in bankruptcy, was thereupon preferred, in which, inter alia, it is stated that the debt for which said action was brought against him by the petitioner, in the Southern District of New York, was one which would be discharged by the act of bankruptcy, and that if such suit is not stayed, great injury would be done to the said petitioner, and he would be precluded from setting up his bankruptcy as a release from said debt. Upon the presentation and consideration of this petition, the court below, on the 15th day of March, 1910, ordered and directed an injunction, as prayed for, restraining the said Gleason, his agents, etc., from taking any further steps or proceeding in said action until the question of the discharge of the said Thaw, as bankrupt, be determined, or until further orders of the court.

The petition for review of this order in matter of law, under section 24(b) of the bankruptcy act, brings before us the single question, whether the debt sued for in the action brought by the petitioner against the bankrupt, in the Circuit Court for the Southern District of New York, was a liability for obtaining property by false pretenses or false representations, within the meaning of section 17a(2) of the bankruptcy act, as amended in 1903 (Act Feb. 5, 1903, c. 487, § 5, 32 Stat. 798 [U. S. Comp. St. Supp.' 1909, p. 1310]), providing that such liabilities are exceptions to the provable debts from which a bankrupt may be discharged. By the act of 1898, as it originally stood, judgments in actions for frauds were made such exceptions, and as such would be binding upon a court of bankruptcy. The amendment of 1903 changed this language to *"liabilities* for obtaining property under false pretenses or false representations,"* so that debts which

are such *liabilities* are now excluded from the provable debts of which the bankrupt may be discharged. While enlarging somewhat the scope of such exceptions, this amendment imposed upon the court of bankruptcy the duty of determining whether the debt sought to be excepted was or was not such a liability. The order of the court below is supported by a well-reasoned opinion, with which we agree and to which little need be added by this court.

The very ingenious and forceful argument presented to this court by the petitioner for review, is founded mainly upon the proposition that:

"The right to command services of the value of $80,000.00 is property; the services also are property; the test is value—not degree of intangibility."

Several decisions in the federal courts, as well as in state courts, are cited in support of this proposition. As to these, the often repeated observation is pertinent, that the authority of cited decisions depends largely upon the facts and circumstances of the case in which they are made. That the word "property" is nomen generalissimum, as asserted by the petitioner, is not to be denied, but no more is it to be denied that its meaning may be restricted, not only by the application of the maxim, noscitur a sociis, but by the purpose for which it is used, or by its evident use as a word of art, or by its use in a technical sense. The very generality of the word requires restriction, according to the circumstances in which it is used. In some judgments, as well as in some obiter dicta, the word "property" has been made to cover, by a sort of rhetorical flourish, everything tangible or intangible of which value may be predicated. There are, however, well considered decisions of the highest authority, in which, from the view point of the particular case, personal rights and liberties are to be included within the meaning of the word "property." Thus, a man's right to labor, to carry on a lawful business, or to practice a lawful profession, may not be taken away from him or be restricted by any act of the state not within its police powers, such act being considered as a deprivation of property within the constitutional inhibition, federal or state. So a combination or conspiracy to destroy or prevent the carrying on of the business of any person within the protection of the law, may be enjoined as a threatened trespass upon a property right. Such cases, however, are far from saying that services actually rendered under a supposed contract are themselves property, which have been taken fraudulently from the possession of the one who has rendered the service, within the meaning of that word as used in the section of the bankruptcy act now under consideration. It is one thing to say that a man's right to engage or sell his services according to his own volition may, for the purposes of its protection, be considered a species of property, and quite another to assert that services already rendered by one person to another are to be considered as property, in order to enlarge or change the ordinary remedies by which the debt due from the person to whom such services were rendered may be recovered. The right to labor in any calling or profession in the future may be considered a property right, for the purpose of protection, but no right exists as to labor or services already

rendered, and there is nothing to protect, except the right of recovering due compensation therefor. In the latter case, nothing has been transferred from the possession of the one who has rendered the services to the other, for whom the services were rendered. We must not allow ourselves, by a subtle verbal casuistry, to confuse a concept of the right to work or render service with the service itself when it has been rendered. The right to render labor or service is one thing; the service itself is quite a different thing.

It would serve no good purpose to discuss all the cases referred to by the petitioner, and we only remark that, underlying them all will be found the distinction to which we have just adverted.

In Ritchie v. People, 155 Ill. 98, 40 N. E. 454, 29 L. R. A. 79, 46 Am. St. Rep. 315, the court held a statute of the state prohibiting the employment of females in any factory for more than eight hours a day, unconstitutional, on the ground that the right to labor and employ labor is a property right, of which the citizen cannot be deprived without due process of law.

The same was said in Gillespie v. People, 188 Ill. 176, 58 N. E. 1007, 52 L. R. A. 283, 80 Am. St. Rep. 176. There, a law making it criminal for an employer to attempt to prevent his employés from joining labor unions, or to discharge them because of their connection with labor unions, was held unconstitutional, as being in contravention of the guaranty that no person shall be deprived of life, liberty or property, without due process of law.

Ex parte Steinman & Hensel, 95 Pa. 220, 40 Am. Rep. 637, also referred to by the petitioner, states merely that the office of attorney at law is his property, of which he cannot be deprived, unless by the judgment of his peers and the law of the land. This decision, of course, was concerned with the enforced deprivation of the right generally to practice a profession in futuro, and no more than any of the other cases cited by the petitioner does it establish his proposition, that services already rendered are a species of property that have been transferred from the owner to another person, and that in the case before us, they have been obtained by the transferee under false pretenses.

The language used in the seventeenth section of the bankruptcy act, to which we have already referred, by which liabilities for obtaining property by false pretenses are exempted from the provable debts discharged in bankruptcy, are the usual and most general words for describing a specific crime. Their use in this connection dates back as far as the Statute of 30 George II, c. 34 (1757), and they have since then, so far as they define the crime, remained unchanged. 19 Cyc. 387. The same language, in substance, has been used in the statutes in this country, and where departed from, it is only by way of enumeration of certain kinds of property that may be included under the general designation. These enumerations all refer to substantive things—to a res—and in no case to which our attention has been called is anything included in the enumeration which approaches, in its description or definition, services rendered. Certainly under no proper and strict administration of the criminal law could any one be indicted under the general language of obtaining property under false pre-

tenses, on the ground that services, whose performance has been induced by a false pretense, are property, within the meaning of the act.

We have no difficulty, therefore, in affirming the order of the court below.