## HISEY v. LEWIS–GALE HOSPITAL, Inc.
### No. 7368.

District Court, W. D. Virginia, at Roanoke. March 24, 1939.

---

22

Wm. G. Creasy, of Roanoke, Va., for petitioner.

Ralph A. Glasgow, of Roanoke, Va., for defendant.

PAUL, District Judge.

The petitioner was adjudicated a bankrupt on December 9, 1938, upon his voluntary petition and in his schedules the defendant was duly listed as a creditor, and thereafter duly received notice of the first meeting of creditors. The bankrupt being without any assets for distribution no trustee was appointed. The defendant appeared at the creditors meeting but, so I am informed, filed no proof of debt.

Within a few weeks thereafter, and before any notice had been given on the bankrupt's discharge, the defendant here, Lewis-Gale Hospital, Inc., brought suit against the bankrupt in the Civil and Police Justice Court of Roanoke on the debt owing to it and which had been duly scheduled in the bankruptcy proceedings and, on January 20, 1939, obtained a judgment against the bankrupt for $216.10 and costs. It appears that at the hearing in the state court the bankrupt appeared with his attorney and suggested his bankruptcy, but the court, after hearing certain evidence, rendered judgment apparently on the theory that the debt was one which was not dischargeable.

The bankrupt has now filed this petition seeking an injunction against any attempt to enforce or collect the judgment obtained against him. As shown by facts stipulated by counsel before this Court, the debt due defendant was incurred in September, 1938, under the following circumstances: Sometime in that month the bankrupt, who was suffering pain in his side, went to the hospital and was examined by a Dr. Davis, who told him that he had an inflamed appendix. Although his condition was not such as in the opinion of the doctor to necessitate an immediate operation, it was decided, upon the request of the patient, that an operation should be performed. The hospital had recently built an addition to its hospital building and the bankrupt was asked whether he wanted a room in this new part or in the old part of the hospital. It was explained to him that a room in the new addition would cost $6.50 a day as against $4.50 per day for a room in the old part of the hospital, and that a bed in a ward would be even less. The bankrupt stated that he wanted a room in the new addition and was informed that he would have to pay cash for his treatment there. He stated that he was able to and would do so. No time was fixed when payment should be made, so far as shown, but it is assumed that it was meant that payment should be made before the patient left the hospital. No advance payment was required of him. The bankrupt was in the hospital about ten days, but did not pay his bill when he left and was permitted to leave with no further action than an inquiry as to when he expected to pay it and his answer that he would do so in a few days. The bankrupt, who was employed by the Norfolk & Western Railway Company, was off from work for several weeks and shortly after his return to work and about six weeks after leaving the hospital had a judgment obtained against him by another creditor, thereby precipitating his bankruptcy. Several weeks after the adjudication in bankruptcy, as before stated, suit was brought by the hospital against the bankrupt in the Civil and Police Justice Court of the City of Roanoke and in rendering the judgment, enforcement of which is now sought to be restrained, the judge of that court recited that it was "for goods and property obtained under false pretenses and false representations".

It is evident that the judge of the state court acted in the belief that the debt was one of those enumerated in Sect. 17 of the Bankruptcy Act, 11 U.S.C.A. § 35, which sets forth debts not released by discharge in bankruptcy; and specifically that it was a liability "for obtaining money or property by false pretenses or false representations", included in the debts named in clause (2) of said Section 17.

A consideration of whether the injunction should be granted as prayed for

calls for a discussion not only of the rights and duties of a bankruptcy court, where the bankruptcy proceeding is still pending and no discharge has yet been granted or applied for, to stay proceedings brought against the bankrupt in another court; but, because there is no dispute as to the circumstances under which the debt was incurred, it calls also for a discussion of whether the liability is a dischargeable one.

The debt in question covers charges for care and treatment of the bankrupt during his hospitalization, apparently including the services of attending physicians. In many aspects, both as to procedure and as to the facts, the situation here is quite similar to that shown in the related cases of In re Thaw, D.C., 180 F. 419; Gleason v. Thaw, 3 Cir., 185 F. 345, 34 L.R.A.,N.S., 894; Gleason v. Thaw, 2 Cir., 196 F. 359; Gleason v. Thaw, 236 U.S. 558, 35 S.Ct. 287, 59 L. Ed. 717. From those cases it appears that Thaw was adjudicated a bankrupt in the Western District of Pennsylvania and that shortly thereafter, and before a discharge was granted or applied for, he was sued by Gleason, an attorney in the United States Court for the Southern District of New York upon a claim for legal services alleged to have been obtained by false pretenses or false representations. Thaw petitioned the bankruptcy court to restrain prosecution of the suit brought against him in New York. Gleason's contention was the same advanced here, i. e. that the liability was not dischargeable. Without attempting a discussion of the several different cases hereinbefore cited and in which this matter came before the courts, it is sufficient to say that they clearly establish the right of a bankruptcy court to stay proceedings brought against the bankrupt upon a provable debt in another court, pending the discharge of the bankrupt; and the right of the bankruptcy court, under such circumstances, to determine whether the debt sued on is dischargeable. They also determine that professional services are not "property" within the meaning of that term as used in Section 17(2) of the Bankruptcy Act.

Section 11 of the Bankruptcy Act, 11 U.S.C.A. § 29, provides that a suit against a bankrupt founded upon a claim from which a discharge would be a release shall be stayed until the question of discharge is determined. When the bankruptcy court is called upon to stay such a suit, it necessarily follows that it has the power to determine whether the debt is dischargeable, and in order that it may judge of the propriety of a stay order. There being no doubt of the right of this court to stay proceedings in another court in a proper case, it remains to be determined whether such order should be entered here.

Section 17(2) provides that a debt is not dischargeable if it is a liability "for obtaining money or property by false pretenses or false representations." (The words "money or" were first included by recent amendment to the act.) Even if it be conceded (of which there is lack of proof) that the representations made by the bankrupt were knowingly and fraudulently made and involved that moral turpitude or intentional wrong on his part, which is a necessary element of the representation, Neal v. Clark, 95 U.S. 704, 24 L.Ed. 586; Forsyth v. Vehmeyer, 177 U. S. 177, 20 S.Ct. 623, 44 L.Ed. 723, the question arises as to whether any "money or property" was obtained by such false representations. Clearly no money was obtained and we are left to a determination of the meaning of the term "property".

In the Thaw cases, heretofore cited, it was held that professional services were not included in the term property. This was held in Gleason v. Thaw, 185 F. 345, by the Circuit Court of Appeals of the Third Circuit. In the second case of Gleason v. Thaw, supra, which went up from the Second Circuit, the same thing was held by the Supreme Court; 236 U.S. 558, 35 S.Ct. 287, 289, 59 L.Ed. 717. In that case, the professional services were those of an attorney; but there would seem no reason why the professional services of a physician should not occupy the same status; nor services, in the way of medical care and treatment, rendered by a hospital. It is true that the service rendered by a hospital to a patient therein may include some items which are not the direct product of the professional skill or training of physicians; but even so the service rendered would not seem to come within the meaning of the term "property" as used in Sect. 17(2) of the Bankruptcy Act. That the term has a limited meaning, confining it to ordinary conception of property as something concrete and tangible which may be the subject of own-

ership and transfer, is clearly indicated in the opinion of the Supreme Court in Gleason v. Thaw, supra, wherein it is said: "At most it denotes something subject to ownership, transfer, or exclusive possession and enjoyment, which may be brought within the domination and control of a court through some recognized process. This is certainly the full extent of the word's meaning as employed in ordinary speech and business, and the same significance attaches to it in many carefully prepared writings."

■ It may be here said that even if the services or benefits obtained by the bankrupt could properly be classed as "property", it seems doubtful that the facts would justify a holding that the liability incurred therefor was not dischargeable. It is conceded that no payment was demanded in advance of the rendition of the service. In reality credit was extended to the bankrupt upon his mere assurance that he was able to pay for what he was asking for and his promise to pay at such future time as payment was demanded. But such promises are implied in every transaction where goods or services are obtained on credit and the failure to make good these promises has not generally been considered to render the debt non-dischargeable; certainly not in the absence of evidence of fraudulent intent and intentional wrong on the part of the bankrupt.

■ When sued in the state court, the bankrupt appeared there and suggested the pendency of the bankruptcy proceedings. This was all that he could do; not having as yet obtained a discharge he could not plead it. That the state court chose not to defer the action pending the granting or refusal of a discharge, but proceeded to give judgment, does not, in my opinion, alter the situation. See Badger v. Jordan Marsh Co., 256 Mass. 153, 152 N.E. 92, where, under a situation strikingly similar to that here, it was held that the character of liability as one dischargeable in bankruptcy is not lost by being reduced to judgment, and approval was given to a suit to enjoin enforcement of a judgment obtained against the bankrupt after adjudication.

The case of Family Small Loan Co. v. Mason, 4 Cir., 67 F.2d 207, has been cited against the right to enjoin the creditor here. But in that case the nature of the liability was stipulated and admitted not to be dischargeable. I take it that the opinion there goes no further than to say that no ground exists to restrain an action on a liability which admittedly would not be released by a discharge. There is a plain implication that actions on debts which would be released by discharge may be restrained.

There is another phase of this matter which the Court thinks warrants discussion and involves the question of whether an injunction should not be issued in circumstances such as appear here even where the dischargeability of the debt may be in doubt, and without the necessity of passing on that question in the injunction proceeding. This relates to the responsibility of the bankruptcy court to determine questions arising in a bankruptcy proceeding and to the propriety of restraining actions by creditors which are in derogation of that responsibility.

In this proceeding the creditor was duly scheduled as such in the bankruptcy petition, received notice of the proceedings, appeared at the meeting of creditors and, with permission of the referee, examined the bankrupt, although it did not prove its debt. The creditor was a party to the proceeding with full opportunity to assert and have determined in the bankruptcy court any questions affecting its debt. However, it chose to ignore the bankruptcy and, without waiting for the bankrupt to apply for a discharge, it proceeded to sue on its debt in the state court, thereby transferring to the latter the determination of matters which could have been determined in the pending bankruptcy proceeding and which it was primarily the duty of the bankruptcy court to determine. In doing so it subjected the bankrupt to the additional expense and trouble of appearing in the state court in an effort to protect himself.

■ As said in Bothwell v. Fitzgerald, 9 Cir., 219 F. 408, at page 415: "The object of the Bankruptcy Act was to establish a uniform system of bankruptcy, and with that end in view to take from the state courts the decision and determination of all such questions and controversies as are by the act placed within the jurisdiction of the bankruptcy courts."

Under the provisions of Sect. 2 of the Bankruptcy Act, 11 U.S.C.A. § 11, courts of bankruptcy are invested with jurisdiction,

among other things, to "* * * (12) Discharge or refuse to discharge bankrupts * * * (15) Make such other orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this Act [title]."

■ Section 17 of the Act having provided what debts are and what are not dischargeable, it follows that a court of bankruptcy, under its duty and power to interpret and administer the provisions of the bankruptcy act, has the power to determine whether a particular debt is dischargeable (Gleason v. Thaw, supra); and it would seem to follow that when ready opportunity offers for such determination in a pending bankruptcy proceeding, the question should not be transferred for determination to a state court.

"It is the obvious scheme of the [bankruptcy] law to protect the bankrupt during the pendency of the proceedings from being harassed by process issuing from the state courts in civil actions." In re Adler, 2 Cir., 144 F. 659, 660.

■ The question of the discharge of a bankrupt is always an issue in a bankruptcy case, or at least a potential issue which immediately becomes active whenever a discharge is contested, as it may be by any creditor. And there is no reason to see why this issue does not exist as to the discharge of particular debts under the provisions of Sect. 17 as well as to the question of a general discharge under Sect. 14, 11 U.S.C.A. §§ 32, 35. The statement heretofore made that the creditor had a ready opportunity to have the question whether its debt was a dischargeable one determined in the bankruptcy proceeding is based on the opinion of this Court that the rights of a creditor in connection with a bankrupt's petition for discharge are not confined to making objection to a general discharge as provided by Section 14; but that the creditor, in the absence of any objection to a general discharge, may raise the question that his particular debt is not dischargeable under Sect. 17, may have that question determined and, if determined in his favor, may have it exempted from the effect of the order of discharge by the terms of the order itself.

■ It should be stated that this Court knows of no jurisdiction where this method of procedure is the established practice as related to debts claimed to be non-dischargeable under the provisions of Section 17. It is, however, a practice regularly used in this district in connection with another class of debts which are barred from discharge, namely, debts scheduled in a prior bankruptcy in which no discharge was obtained. Every court of bankruptcy has, I assume, the frequent experience of considering bankruptcy proceedings where it appears that the bankrupt had a few years previously been adjudicated in another bankruptcy but had failed to get a discharge and where he had included in the second proceeding the same debts, or some of them, scheduled in the first. It is now well settled that the bankrupt is not entitled to obtain discharge from such debts in the second proceeding where objection is made.

■ In such cases it is a customary practice in this district, when application for discharge is made, for creditors whose debts were scheduled in the first petition to object to any discharge of such debts and to ask the court by the terms of the order of discharge to exempt them from its operation. Examination of the decided cases leads to the conclusion that this practice is approved and followed in many other districts. See In re Bacon, 5 Cir., 193 F. 34, where it is approved as a proper and convenient practice; see also Pollet v. Cosel, 1 Cir., 179 F. 488, 30 L.R.A.,N.S., 1164; In re Von Borries, D.C.Wis., 168 F. 718; In re Westbrook, D.C.Ala., 186 F. 414; Monk v. Horn; 5 Cir., 262 F. 121. And in the case of Freshman v. Atkins, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193, the Supreme Court has sanctioned this procedure in a Texas case heard in the District Court under the style of In re Freshman, D.C., 290 F. 609.

■ No sound reason appears why a like procedure is not applicable where the debts are made non-dischargeable by the provisions of Sect. 17, a procedure which is convenient, which works no hardship on either the bankrupt or the creditor and which allows the matter in dispute to be passed upon by the bankruptcy court to the care of which the duty of interpreting the bankruptcy act has been committed. It is conceded that debts not dischargeable under Sect. 17 occupy a somewhat different status than those scheduled in a prior proceeding from which no discharge was obtained. As to the latter class, the ob-

26

jection to discharge rests only in the fact that they were scheduled in the prior proceeding and upon the theory of a previous adjudication in that proceeding. And if the creditor fails to bring the prior adjudication to the attention of the Court and permits a general order of discharge to enter, such order will probably have the effect of discharging these debts as well as others incurred since the first proceeding. Bluthenthal v. Jones, 208 U.S. 64, 28 S.Ct. 192, 52 L.Ed. 390. As to such debts as are enumerated in Sect. 17, the statute provides that they are not released by a discharge and it seems settled that a general discharge does not prevent a creditor from thereafter enforcing the liability if he can show that the debt was of a non-dischargeable class. In such case, a creditor may refrain from raising in the bankruptcy court any question about the dischargeability of his debt and may sue on it in another court which will then determine whether it was dischargeable. And if no steps were taken by the creditor until the bankruptcy proceedings were terminated and no longer pending, the only way in which the dischargeability of the debt could be determined would be by the court in which suit was brought on it.

But in the instant case, the bankruptcy proceeding is pending and no discharge has been granted and the question arises whether the creditor should be allowed to sue in another court at this time. Conceding that the creditor cannot be compelled to submit to the bankruptcy court the question of whether its debt is dischargeable there nevertheless exists the question of whether, during the pendency of this proceeding and with full opportunity to have its rights determined in a court charged primarily with the duty of determining them, it should be allowed to harass the bankrupt by haling him into another court and putting him to the trouble and expense of defending himself there.

Under the principles of comity existing between courts of different jurisdictions, there arises also a question as to whether the state courts should entertain such suits while the bankruptcy proceedings are still pending and undetermined here. It is suggested that it would tend to harmony and would do no injustice to either the creditor or the bankrupt if the state court would stay any proceedings before it so long as the bankruptcy proceeding was pending and would point out to the creditor his opportunity to assert his rights in the bankruptcy court.

The views stated in the latter part of this opinion are not necessary to justify the granting of the injunction prayed for in this case. But the court has thought it proper to extend its views in this respect for the reason that there has been a growing custom on the part of certain classes of creditors claiming to have non-dischargeable debts of ignoring the bankruptcy proceedings and of suing on the debts in the state court, even while the bankruptcy proceeding is still pending. By so doing they transfer to other courts matters which are primarily for the consideration of this Court and do so while they still have ready and abundant opportunity to have the questions settled in this court. Whether the purpose is to harass and intimidate the debtor or not, it undoubtedly has that result as well as the imposition on the bankrupt of added expense and trouble in defending such suits. For these reasons, it is my opinion that whenever a creditor undertakes to sue in another court while the bankruptcy is still pending and the question of the bankrupt's discharge remains undetermined, such creditor should be restrained from prosecuting his suit in such other court until this court has acted on the bankrupt's discharge. And that this may be done without the necessity of determining, at the time the injunction issues and as a basis for it, whether the debt is a dischargeable one.

The injunction prayed for will be granted.