Samuel Strobl, Appellee, v. John Zidek, Jr., Appellant.

Gen. No. 40,772.

Heard in the first division of this court for the first district at the June term, 1939. Opinion filed April 8, 1940.

ARTHUR CHITTICK and JOHN A. NIEMEYER, both of Chicago, for appellant.

CLARENCE T. MORSE, of Chicago, for appellee.

Mr. Justice O'Connor delivered the opinion of the court.

August 25, 1938, plaintiff brought suit to revive a decree entered January 7, 1924 in the superior court of Cook county ordering that defendant pay plaintiff $12,782.07. After the pleadings were filed plaintiff moved for a summary judgment. The motion was allowed, a decree reviving the judgment entered, and defendant appeals.

The record discloses that July 18, 1919, plaintiff and defendant entered into a written contract for the manufacture and sale of metallic wheels, etc., in accordance with letters patent. A few years thereafter, the parties disagreed and March, 1922, plaintiff filed his bill for an accounting and other relief, claiming defendant had breached the contract. After the issue was made up in that suit, the matter was referred to a special commissioner who took the evidence, made up his report and January 7, 1924, it was decreed that defendant pay to plaintiff $12,782.07.

On the day the decree was entered, Zidek, Jr., filed his petition in the United States District Court praying that he be adjudged a bankrupt. He scheduled the judgment entered against him in the chancery suit. Afterward Strobl filed his claim based on the decree and it was allowed but no dividend paid.

October 10, 1924, Strobl in the bankruptcy proceeding filed his verified objection to the discharge of Zidek, Jr., in which he swore he was a creditor of the bankrupt, had filed his claim; that it was allowed and unpaid, and that he would ''be affected by the discharge of said bankrupt.'' The matter was referred to Referee Wean and September 30, 1927, he filed his report in which he recommended the bankrupt's petition for discharge be allowed and March 26, 1928, the discharge was granted by the court. March 26, 1929, Strobl filed a petition to vacate the order of discharge. (The petition does not appear in the record.) The petition was

referred to Referee Parkin and November 27, 1929, he filed a report in which he recommended that the petition to vacate the order of discharge be denied.

December 2, 1937, a memorandum opinion by Judge Wilkerson was filed, a part of which is:

"Objections were filed to the report of Referee Parkin, and there were numerous proceedings with reference to those objections which resulted in the entry of an order by Judge Carpenter on December 15, 1932, denying the motion to vacate the order of discharge. May 25, 1933, Strobl was granted permission to make a motion to re-open the case. This motion was set for hearing by Judge Carpenter and June 5, 1933, the motion to re-open the case was withdrawn. On December 31, 1935, a motion was made by Strobl to re-open the case, and to set aside the order granting the discharge.

"The motion of Strobl to re-open the case and to vacate the order granting the petition for discharge based upon the report of Referee Wean and to vacate the order of Judge Carpenter affirming the report of Referee Parkin with reference to the re-opening of the case, has been considered by the Court. The proceedings before the Referee have been examined, and the Court is of the opinion that the motion of Strobl must be denied.

"The docket in this case shows that after Judge Carpenter entered the order on December 15, 1932, denying the motion to vacate the discharge, the objecting creditor made a motion on May 25, 1933, to re-open the case and reconsider the ruling, and that that motion was withdrawn on June 5, 1933. More than two years were permitted to elapse before any other proceeding was taken in the case. Notwithstanding that fact the Court has given consideration to the evidence which was presented to the Referee upon the objections to the discharge and the motion to set aside the order of discharge, and is of the opinion that upon the record

now before the Court the order of Judge Carpenter was correct. The motion of the objecting creditor Strobl to vacate the order of discharge heretofore entered in this cause and to re-open the cause, therefore, must be denied.''

Plaintiff contends that since the damages awarded to him by the decree of the superior court were ''for willful and malicious injuries by defendant to the property of plaintiff,'' it was not dischargeable in bankruptcy and reliance is placed upon section 17 of the Bankruptcy Act, the applicable portion of which is: ''A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as . . . (2) are liabilities for . . . willful and malicious injuries to the . . . property of another.'' On the other side, defendant's position is that the $12,782.07 awarded plaintiff by the decree of the superior court was not for willful and malicious injuries to plaintiff's property but the amount was reached in stating the account, and for damages for breach of the contract between the parties, which was the basis of the suit.

On this phase of the case the question therefore is whether the record discloses that plaintiff's recovery in the chancery suit was based on defendant's ''willful and malicious injuries'' to plaintiff's property.

It seems to be conceded by counsel that the burden is on plaintiff to prove that the decree entered in the chancery suit is for ''willful and malicious injuries'' to his property. Defendant's position is that the record is made up of the pleadings in the instant case, the pleadings in the chancery suit, the master's report and the decree, and that the evidence taken before the master in chancery suit, which was made a part of the pleadings in the instant case, cannot properly be considered; while counsel for plaintiff contends that the evidence taken before the master is properly a part of the record.

We do not stop to decide this question for the reason that we are of opinion that in either view, plaintiff cannot recover. A consideration of the record discloses plaintiff's suit was based on his contention that defendant had breached the written contract entered into between them, and the report of the master and the decree are to the same effect. The method of accounting by the master, approved by the decree, awards plaintiff the amount due him under the accounting, and for damages he sustained by reason of the breach. No vindictive or punitive damages were allowed. The record discloses that on the day plaintiff filed his suit for an accounting, defendant Zidek brought two suits against plaintiff on notes executed by plaintiff to evidence moneys advanced by defendant to him under the contract, and after the judgments were entered in these two cases, Zidek caused a levy to be made on some of plaintiff's property and it was sold. The master, in passing on this question said: ''Whatever may be argued against the wisdom of the conduct of Zidek in bringing this series of suits from a business standpoint or one of morals I find that the defendant herein, John Zidek, Jr., was clearly within his legal rights in filing the suits in question and that they were not prematurely brought. The course of conduct of Zidek shown by the several suits at law proves, however, beyond doubt the repudiation by Zidek of the contract between Strobl and Zidek as set forth in paragraph 4 of this report and his determination to ruin Strobl.'' Counsel for plaintiff says this finding of the master is supported by the testimony of two witnesses and other evidence in the record; that one of the witnesses testified: ''Mr. Zidek told me that he was going to take everything away from the Strobl Manufacturing Co. and put Strobl out of business so he won't be able to make any more wheels,'' and the other: ''I heard Mr. Zidek say to Mr. Sparry that he was going to take all of the machinery away from Mr. Strobl and that it

would be impossible for him to make any more wheels under his patent.'' There is some contention between the parties as to the construction to be placed on the testimony of these two witnesses; plaintiff's position is that it tends to show Zidek intended to ruin him— acted maliciously, while defendant contends this testimony refers to the time the levy was made on plaintiff's property. A number of other matters are pointed out by counsel for plaintiff as indicating that defendant's action was malicious, but we think it would serve no purpose to discuss these matters in detail because we are of opinion that his contention was not sustained by the master or by the chancellor.

Upon a consideration of the whole record, we think plaintiff has failed to show that the action of defendant was of such a character as would prevent his claim from being discharged in bankruptcy.

There is another reason why the decree cannot stand. Plaintiff, in his verified objections to defendant's discharge in the bankruptcy court, after setting up that his claim had been filed and allowed in the bankruptcy proceeding, said that his claim would be ''affected by the discharge of said bankrupt''—i. e. that the claim would be released if the bankrupt were discharged. That question was litigated and re-litigated a number of times in the federal court, as shown by the opinion of Judge Wilkerson and adjudicated against Strobl. Therefore the same question cannot be re-litigated as was sought to be done in the instant case. *Stoll v. Gottlieb*, 305 U. S. 165. That case originated in a proceeding brought under 77B of the Bankruptcy Act. There the plan of reorganization provided, among other things, for the discharge of the personal guaranty of the mortgage bonds. In the bankruptcy court it was objected that the guarantor of the bonds could not be discharged in such a proceeding but the court decided otherwise. Afterward suit was brought on some of the bonds in the municipal court of Chicago

and it was contended the matter had been adjudicated in the federal court. The contention was overruled and judgment entered on the bonds. The judgment was reversed by this court, *Gottlieb v. Crowe,* 289 Ill. App. 595. The matter was taken to the Supreme Court where the decision of the Appellate Court was reversed, *Gottlieb v. Crowe,* 368 Ill. 88. *Certiorari* was allowed by the Supreme Court of the United States to review the judgment. In the opinions in each of the three courts of review the question of the power of the federal court in bankruptcy to discharge the guarantor is discussed. The Supreme Court of the United States held the judgment of the bankruptcy court was *res judicata.* One paragraph of the syllabus of the case as reported by the United States Supreme Court is: "In reaching this conclusion, the Court assumes that the bankruptcy court did not have jurisdiction of the subject matter of its order—the release, in reorganization, of a guarantor from his guaranty. The decision here is based on the fact that in an actual controversy the question of the jurisdiction over the subject matter was raised and determined adversely to the respondent. That determination is *res judicata* of that issue in this action, whether or not power to deal with the particular subject matter was strictly or quasi jurisdictional." The opinion was rendered by Mr. Justice REED and after stating the facts and discussing some of the authorities, he referred to *Vallely v. Northern Fire & Marine Ins. Co.,* 254 U. S. 348, and in distinguishing that case from the one before the court, said: "This decision is inapplicable here because there was not an actually contested issue and order as to jurisdiction. The case is also distinguishable because the motion to vacate was made in the same bankruptcy proceeding as the order," and further on in the opinion said: "It is frequently said that there are certain strictly jurisdictional facts, the existence of which is essential to the validity of proceedings and the absence of which

renders the act of the court a nullity. Examples with citations are listed in *Noble v. Union River Logging R. Co.* For instance, service of process in a common law action within a State, publication of notice in strict form in proceedings *in rem* against absent defendants, the appointment of an administrator for a living person, a court martial of a civilian. Upon the other hand there are quasi-jurisdictional facts, diversity of citizenship, majority of litigants, and jurisdiction of parties, a mere finding of which, regardless of actual existence, is sufficient. As to the first group it is said an adjudication may be collaterally attacked, as to the second it may not. We do not review these cases as we base our conclusion here on the fact that in an actual controversy the question of the jurisdiction over the subject matter was raised and determined adversely to the respondent. That determination is·*res adjudicata* of that issue in this action, whether or not power to deal with the particular subject matter was strictly or quasi-jurisdictional.'' The court in that case also said: ''It is just as important that there should be a place to end as that there should be a place to begin litigation.'' This statement is certainly applicable to the case at bar.

It is well established that in a bankruptcy proceeding the federal court has the power and the right to pass on the dischargeability of a debt. Gilbert's Collier on Bankruptcy, 4th Ed. par. 535; *Hisey v. Lewis-Gale Hospital, Inc.,* 27 F. Supp. 20; *Sims v. Jamison,* 67 F. (2d) 409; *In re Devereaux,* 76 F. (2d) 522; *Local Loan Co. v. Hunt,* 292 U. S. 234.

For the reasons stated, the decree of the superior court of Cook county is reversed.

*Decree reversed.*