## MONAHAN v. RAILROAD RETIREMENT BOARD.

### No. 10039.

United States Court of Appeals Seventh Circuit.

April 24, 1950.

Patrick M. Monahan, pro se.

Myles F. Gibbons, Edward E. Reilly, David B. Schreiber, David M. Goldman, Attys., Railroad Retirement Board, Chicago, Ill., for respondent.

Before KERNER, DUFFY, and FINNEGAN, Circuit Judges.

KERNER, Circuit Judge.

This is a proceeding under § 11 of the Railroad Retirement Act of 1937, as amended, 45 U.S.C.A. § 228k, and § 5(f) of the Railroad Unemployment Insurance Act, as amended, 45 U.S.C.A. § 355(f), to review a decision of the Railroad Retirement Board rendered on June 8, 1949, which held that petitioner, previously awarded an annuity, was not entitled to further benefits which he claimed under the Railroad Retirement Act and the Railroad Unemployment Insurance Act.

The record discloses that petitioner, on January 18, 1939, while still employed, filed with respondent a statement in which he listed service to the Baltimore and Ohio Railroad as a sectionman in a period beginning in March, 1902, and ending in February, 1903; as a fireman-engineer beginning in February, 1906, and ending in September, 1913. On December 4, 1944, after this service had been verified, respondent's Director of Retirement Claims notified petitioner that he had been credited with 235 months of service rendered prior to January 1, 1937, as well as $8814.50 in compensation earned in 80 months during the "test period" 1924-1931, an average of $110.18 per month. December 8, 1944, pe-

titioner wrote the director a letter in which he requested that there be included in his prior service record credit for work which he claimed he performed in a period running: from May, 1896, to January 18, 1902. He claimed that during this period, because of his father's ill-health, he helped him perform his duties as a pumper for the Baltimore and Ohio Railroad. In this letter petitioner stated that he did this work before and after school hours and on weekends until he left school in 1898, and that thereafter he "worked until the pump station was discontinued January 18th, 1902." He added that while he was not on the payroll of the railroad, "I was doing railroad work, pumping water, drying and screening sand, putting soda ash in engine tanks, attending switch lamps, so I would like to have period May-1896 to January-18th-1902 included in my prior service." After an investigation was made concerning petitioner's claim that he rendered service under an arrangement with his father, petitioner was notified that credit could not be given for service during the 1896-1902 period because the Board was unable to find any basis for determining that the situation was as petitioner claimed.

The Railroad Retirement Act of 1937 provides annuities for individuals otherwise qualified who were "employees" of "employers" within the meaning of the Act on or after August 29, 1935. 45 U.S.C.A. §§ 228a to 228s. A monthly annuity is computed by multiplying an individual's "years of service" as an "employee" of an "employer" by a percentage of his "monthly compensation." The number of "years of service" is ascertained by dividing by twelve the total number of calendar months, whether or not consecutive, in which the individual rendered compensated service as an "employee" of an "employer." Service performed prior to January 1, 1937, may be credited for individuals who were "employees" on August 29, 1935. The average monthly compensation during the years 1924-1931, called the "test period," is taken as the "monthly compensation" with respect to all the years of service prior to 1937. 45 U.S.C.A. § 228c(c).

Petitioner filed his application for an annuity on September 3, 1946. He gave the date of his birth as October 8, 1883, and indicated that he was applying for an annuity to begin before the age of 65, on the ground that he was totally and permanently disabled. Under § 2(a) of the Railroad Retirement Act as it was in effect prior to January 1, 1947, an individual could not qualify for an annuity before reaching the age of 65 unless one of the following combinations of factors existed: (1) age 60, and 30 years of service; or (2) age 60, and total and permanent disability for regular employment for hire; or (3) total and permanent disability for regular employment for hire and 30 years of service. See 45 U.S.C.A. § 228b(a). Petitioner met the age requirement of 60 years, but having been denied credit for the claimed service in the 1896-1902 period, he was credited with only 25 years of service.

The medical evidence consisted of a statement from petitioner's personal physician that he had treated petitioner for an acute sciatic neuritis in 1941 and 1942, and for a cerebral hemorrhage in June, 1942, and that petitioner was suffering from a hypertensive cardiovascular nephritis, and that in his opinion petitioner "will be totally disabled from carrying on his customary means of a livelihood for the rest of his life, and I consider him a totally permanently disabled individual." There was also a report of a physical examination of petitioner by Dr. A. R. C. Schmidt. This report disclosed no organic weakness of the heart to which an angina pectoris could be related. He found no physical impairment other than generalized arteriosclerosis of a moderate degree, and blood pressure which might be considered to indicate mild hypertension. He reported that petitioner's heart was normal in size and position; that there was no increase in cardiac dullness and no thrills; that there were sounds of normal rhythm; that there was a slight systolic murmur at the aortic area; and that the second aortic sound was accentuated.

All of the evidence thus submitted by the parties was examined by the Disability Rating Board. It found that petitioner was not totally and permanently disabled. It

did find, however, that petitioner was permanently disabled for work in his regular occupation, and on June 4, 1947, certified that petitioner was entitled to an annuity at $50 per month beginning January 1, 1947. He was notified of the award, and was informed that his annuity was based on 25 years of service and monthly compensation of $115.17. Effective July 1, 1948, the annuity was increased to $60 a month as a result of legislation. Section 1, Pub. Laws No. 744, 80th Congress, 2nd Sess., approved June 23, 1948, 45 U.S.C.A. § 228c(a).

Petitioner appealed to the Appeals Council, an intermediate appeal body of the Board. The chairman of the Appeals Council wrote him requesting information as to the terms of any contract he had made with his father with regard to the performance of the work at the pump station, as to the particular months in which he claimed he performed such service and whether there were any records to substantiate his claim, and as to whether his father had authority to employ help to perform the work. Petitioner replied that "the contracts so far as I know were verbal, as for compensation, pumpers wages at this time was $35.00 per month, but due to the extra work, attending switch lights, drying and screening sand, putting soda ash in engine tanks, etc., this station paid $2.00 extra or $37.00 per month, I was paid two dollars per month for my service and I worked some in every month during this period of time, hours range from four to twelve each day." With reference to whether his father had authority to hire help, petitioner said: "at that time this was practised in other occupations, and since the officials had been at the pumphouse when I was fully in charge there was never no disapproval of my working." The Appeals Council sustained the decision of the Disability Rating Board. An appeal was taken to the entire Board. It sustained and affirmed the decision of the Appeals Council.

Petitioner contends here, as he did before the Board, that he should be credited with service from May 1896 to January 1902; that his minimum annuity should be based on the first 16 years and 8 months of service, and an additional annuity with respect to the remaining 8 years and 4 months should be credited and paid to him, and that his monthly compensation with respect to service prior to January 1, 1937, should be the monthly average of his earnings in the period, June 1, 1925 to August 15, 1928, which he claimed was the only part of the "test period" in which he had regular employment, and not the average of his earnings in all the months in which he worked in the period 1924-1931. He also claims benefits under the Railroad Unemployment Insurance Act for the periods of unemployment because of illness between February 17, 1941, and January 1, 1947, the latter date being the beginning date of his annuity.

In the consideration of petitioner's contentions it is to be remembered that the case is not before us on trial *de novo*. The only issue open as to the facts is whether the findings of the Board are supported by substantial evidence and that they are not based on error of law. Squires v. Railroad Retirement Board, 5 Cir., 161 F.2d 182, and cases cited therein in the footnote.

The Board found, *inter alia,* that petitioner was not in the compensated service of an employer subject to the Act in the period, May 1896 to January 1902; that he was not entitled to unemployment compensation because of sickness in 1941 and the years 1942 to 1946; that he was not totally and permanently disabled for regular employment for hire in the period, July 3, 1946 to December 31, 1946; that the proper beginning date of his annuity was January 1, 1947, and that his annuity has been correctly computed and he is receiving the amount to which he is entitled under the Act.

We perceive no error of law committed by the Board and since our examination of the record has convinced us that the findings of the Board are supported by the evidence, the order of the Board must be affirmed. It is so ordered.