**RAILWAY EXPRESS AGENCY, Inc.,** Petitioner,

v.

**RAILROAD RETIREMENT BOARD,** Respondent,

Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, The Order of Railroad Telegraphers, Railway Labor Executives' Association, Intervenors.

No. 11924.

United States Court of Appeals Seventh Circuit.

Jan. 9, 1958.

Elmer F. Slovacek, Chicago, Ill., Fulmer Long, New York City, for petitioner.

Lester P. Schoene, Washington, D. C., Milton Kramer, Washington, D. C., for intervenors.

Myles F. Gibbons, General Counsel, Chicago, Ill., David B. Schreiber, Associate General Counsel, Railroad Retirement Board, Chicago, Ill., Edward E. Reilly, David M. Goldman, Chicago, Ill., of counsel, for respondent.

Before DUFFY, Chief Judge, and FINNEGAN and HASTINGS, Circuit Judges.

DUFFY, Chief Judge.

Railway Express Agency seeks a review of jurisdictional order No. 56–235 of the Railroad Retirement Board dated August 29, 1956, holding that 1) certain classes of individuals rendering service for Express Agency come within the definition of "employee" under the Railroad Retirement Act (45 U.S.C.A. § 228(a–y)), and the Railroad Unemployment Insurance Act (45 U.S.C.A. §§ 351–367) and 2) denying Express Agency's claim for a refund of contributions paid under protest in the sum of $108,816.89 pursuant to Title 45 U.S.C.A. § 358, Railroad Unemployment Insurance Act.

Express Agency did not consider those of its agents defined as "merchant agents" and as "joint agents" and their assistants as employees under the Railroad Retirement Act. By reason thereof, the proceedings now before us were initiated by Board order dated October 28, 1937. The Railroad Unemployment Insurance Act became effective on July 1, 1939. By order dated August 1, 1939, the Board held that individuals who were designated "joint agents" and "merchant agents" were employees under the Railroad Retirement Act.[1] The

1. The Board pays benefits and collects contributions under the Railroad Unemployment Insurance Act. These functions are divided under the Railroad Retirement Act; the Board pays benefits under that Act and the Internal Revenue Service administers a companion taxing statute. Only unemployment insurance contributions are involved in this proceeding against the Board.

Board designated the proceedings "Jurisdictional Docket No. 2."

Thereafter, Express Agency paid, under protest, railroad retirement taxes and railroad unemployment insurance contributions with respect to "merchant agents", "joint agents" and their employees. On June 23, 1948, the Board reopened Jurisdictional Docket No. 2 and initiated proceedings which it designated as Jurisdictional Docket No. 2–2A which resulted in Board order 56–235 dated August 29, 1956, which is the basis for this petition for review.

The rail express operations of Express Agency are conducted by virtue of a standard agreement between Express Agency and each railroad over which express shipments are carried. Arrangements were made in this agreement for railroad agents and other employees to act as express agents on railroad premises. These agents are referred to as "joint agents" or "joint railroad-express agents."

Express Agency also arranged with merchants and others having occupations wholly outside the railroad industry whereby such persons would represent the Express Agency as agents and conduct the express business on premises which they occupied. These agents have been classified as, and are referred to herein as "merchant agents." Joint agents and merchant agents are used principally in smaller communities where the volume of business would not support a full-time agent.

At the opening of the first hearing in Jurisdictional Docket No. 2–2A held August 10–12, 1948, Express Agency stipulated solely for the purpose of these proceedings that "joint railroad express agents" and their employees are employees of the Express Agency under the two Acts. At the time of the hearings, Express Agency had approximately 22,-000 agents. Of these more than 16,000 were "joint railroad-express agents."

In the 1938 proceedings, Express Agency identified 1469 individuals as "merchant agents." Of these 734 were merchants or storekeepers, 56 were farmers, 53 were housewives, 92 were postmasters or postmistresses, 117 were in the trucking, drayage or taxi business, 62 operated automobile agencies, service stations and garages. The remainder were engaged in occupations such as clerk, packing concern employee, coal company employee, store employee, hotel employee, teacher, priest, student, insurance salesman, mail carrier, undertaker, painter and blacksmith. These agents were generally paid on a commission basis which was often in a small amount.

There were no formal written agreements between Express Agency and its agents except such as might be included in its Form 100 "Application for Employment" and its Form 95 "Special Instructions to Agents." Form 100 is and was completed by all commission agents, exclusive and non-exclusive, and also by salaried agents and all other regular employees. Prior to November, 1945, this form included an agreement by the signer to "faithfully perform all his duties, including the keeping of true and correct accounts of the business of the Company conducted by him or in his charge, all as required by the rules and regulations of the Company; * * *".

All commission agents, exclusive, joint, and merchant included, used Form 95 "Special Instructions to Agents" for the transfer of accounts from one agent to another, and the same form of monthly balance sheets.

At the time an agreement is made for the representation of Express Agency by a merchant agent, a supervisory employee of the Express Agency instructs the new agent as to the practices to be followed in the conduct of the Express Agency. Non-exclusive commission agents, merchant agents included, are customarily furnished with a copy of Express Agency's "General Rules and Instructions." Two editions of this book were issued, one in 1936 and the other in 1948. It is the 1936 edition which was usually referred to throughout the hearings. The Rules were preceded by the

following: "Notice to Employees: The Rules, Instructions and Information contained herein are intended for the guidance and use of the Company's employes only. The business of the Company must be transacted strictly in accordance therewith."

The "Rules" contained 1155 rules and instructions setting forth in great detail how the many operations of the express business, including those of non-exclusive agents, are to be conducted. The General Rules and Instructions were issued for the guidance of all individuals doing express work whether salaried employees or exclusive or non-exclusive commission agents.

Various circulars and bulletins were sent out by Express Agency's superintendents to non-exclusive commission agents, including merchant agents. Such agents also received oral instructions from Express Agency's Route agents whose function is to visit the non-exclusive commission agents periodically to see that Express Agency's Rules and Regulations are observed.

Express Agency furnishes to agents, including merchant agents, necessary forms and stationary to conduct express business. Other equipment furnished varies from agency to agency, but may include platform scales, counter scales, safe, platform trucks, desks, chairs, stationary cases, chests of drawers, metal stamps and revolver. Where Express Agency furnishes scales and trucks, it maintains and replaces them at its own expense. Except with respect to the handling of express shipments to and from trains and in performing pickup and delivery work, the merchant agents usually perform their express work on their own premises.

The merchant agent furnishes 1) the place where the express business is to be performed; 2) business machines such as typewriters and adding machines; 3) the telephone; 4) the motor truck if pickup and delivery service is furnished, together with gasoline, oil, repairs; 5) advertising of express in the merchant agent's location; 6) all insurance which may be carried including workmen's compensation and public liability and fire insurance. The merchant agent hires, discharges and determines the working conditions and rate of pay of those who may perform for him or her some of the Express Agency's work.

Some merchant agents have substantial investments in their business interests in addition to their express work, but most of such agents have a comparatively small investment in the express service as such. Both Express Agency and the merchant agents may terminate the relationship at any time.

At all merchant agencies, express shipments are received and delivered, and Express Agency's uniform receipts are used; transportation and C.O.D. charges are collected; regular reports to Express Agency are made on Agency forms, and funds are remitted to the Agency regularly. At some merchant agencies financial paper is sold, trains are met when necessary and pickup and delivery of shipments by motor truck are furnished.

No commission agents are carried on the Express Agency's payroll. They receive their compensation by deducting the amount of their commissions from the express charges collected by them. This commission generally amounts to 10% of the express charge. At times, however, there is an additional charge for services such as pickup and delivery.

Express Agency does not specify or set the working hours of the non-exclusive commission agents, such as merchant agents. Such business is usually performed during the customary business hours of the agent's regular business or occupation. However, shipment of perishable products and animals may have to be handled outside of normal business hours and train schedules may also require service beyond the hours during which merchant agents ordinarily carry on their own business.

Express Agency conducts operations by rail, water, motor vehicle and air. It is a common carrier and is subject to Part I of the Interstate Commerce Act,

49 U.S.C.A. § 1 et seq., and, as such, is an "employer" under the Railroad Retirement Act and the Railroad Unemployment Insurance Act. Express Agency was organized by certain railroads in the continental United States and began operations March 1, 1929. It is successor to the American Railway Express Company which had conducted express transportation business since July 1, 1918, when it succeeded the Adams Express Company, the American Express Company, the Southern Express Company and Wells Fargo & Company which were the principal express companies operating in the United States at that time.

■ Railway Agency urges that its merchant agents are not employees but are independent contractors. It points to various tests under common law principles and insists that these tests establish the status of independent contractor for its merchant agents. Among other items are that the merchant agent furnishes the premises where the express business is conducted; he hires and discharges the individuals who work for him in the express business; he furnishes business machines and he is not granted a vacation by the Express Agency. The question of control over details of the work is also stressed.

The examiner made detailed Findings of Fact and Conclusions of Law which were adopted by the Board which then determined that certain agents including merchant agents and the individuals engaged by them to perform and assist in performing express work "are and have been at all times employees of the Express Agency with respect to their express work, within the meaning of the Railroad Retirement and Railroad Unemployment Insurance Acts, except that no opinion is expressed with respect to the creditability of any pickup and delivery service performed at any express office as a part of a general drayage business conducted by the agent or his assistant."

■ Section 5(f) of the Railroad Unemployment Insurance Act, which is incorporated by reference in Section 11 of the Railroad Retirement Act states: " * * * The findings of the (Railroad Retirement) Board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive. * * *" Therefore, the Retirement Board's decision should not be set aside if supported by substantial evidence, is not arbitrary and has a reasonable basis in law. Monahan v. Railroad Retirement Board, 7 Cir., 181 F.2d 751, 753; Dunne v. Railroad Retirement Board, 7 Cir., 183 F.2d 366, 367; Schafer v. Railroad Retirement Board, 7 Cir., 217 F.2d 874, 875. To sustain the Commission's interpretation and application of the statutory term "employee" we need not find that such construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings. Southern Development Company v. Railroad Retirement Board, 8 Cir., 243 F.2d 351, 353 (citing and quoting from Unemployment Compensation Commission, etc., v. Aragan, 329 U.S. 143, 153, 67 S.Ct. 245, 91 L.Ed. 136). "It is not the court's function to substitute its own inferences of fact for the Board's, when the latter have support in the record." National Labor Relations Board v. Hearst Publications, Inc., 322 U.S. 111, 130, 64 S.Ct. 851, 860, 88 L.Ed. 1170.

There was nothing arbitrary or capricious about the Board's procedure. Three hearings were held. Express Agency was given unlimited opportunity to produce witnesses and to introduce exhibits. Agency's attorneys were permitted to make oral arguments before the examiner at the first hearing, before the Board at the second hearing, and before both the examiner and the Board in the third hearing.

One difficulty in determining by the application of common law principles whether an individual is an employee or an independent contractor is that there is no single, universally accepted formula for the common law tests. In Williams

v. United States, 7 Cir., 126 F.2d 129, 132 this Court pointed out that there is a "considerable contrariety of opinion" as to the elements in the common law test.

■ If there is any real difference between the generally accepted common law tests and the statutory definition, the latter must prevail. Insofar as this litigation is concerned, the definition of the term "employee" is the same in the Railroad Retirement Act,[2] the Railroad Unemployment Insurance Act,[3] and the Railroad Retirement Tax Act.[4] The Railroad Retirement Act, under Section 1(b) and (c) provides:

"(b) The term 'employe' means (1) any individual in the service of one or more employers for compensation * * *

"(c) An individual is in the service of an employer * * * if (i) he is subject to the continuing authority of the employer to supervise and direct the manner of rendition of his service, or he is rendering professional or technical services and is integrated into the staff of the employer, or he is rendering, on the property used in the employer's operations, other personal services the rendition of which is integrated into the employer's operations, * * * *"

As the merchant agents do not render professional or technical services, we can eliminate a consideration of the phrase "or he is rendering professional or technical services and is integrated into the staff of the employer." Furthermore, the last clause hereinbefore quoted commencing with the words "* * * or he is rendering, on the property * *" became effective only with respect to services rendered after December 31, 1946. Reynolds v. Northern Pacific Railway Company, 8 Cir., 168 F.2d 934. We, therefore, focus our attention on the words "if * * * he is subject to the continuing authority of the employer to supervise and direct the manner of rendition of his service, * * *".

■ It must be conceded that the activities of the merchant agents do present some indicia of the independent contractor status. But whether merchant agents are employees or independent contractors must be determined on the basis of the entire situation. "The quality of the relationship (employee or independent contractor) is to be judged by the presence or absence of no single evidentiary factor, but by an over-all view." Anglim v. Empire Star Mines Company, Ltd., 9 Cir., 129 F.2d 914, 917.

The Board found there was stronger evidence of employee status when all the activities of the merchant agents were considered. The general rules and instructions, the circular letters of instruction, the supervising activities of the Route Agents, among others, are all evidentiary items showing the existence of the Express Agency's continuing authority to supervise and direct the manner of rendition of its service.

All non-exclusive commission agents including merchant agents, perform a continuing express service. Their work is an integral part of Express Agency's regular daily nationwide transportation service. While their share of the total business is small, Express Agency could not maintain a comprehensive nationwide express service without them. The nature of Express Agency's business makes essential a supervising control over each agent's work.

We hold that there is substantial evidence to support the Board's findings that merchant agents hereinbefore described are employees of Railway Express Agency, Inc.

The decision of the Railroad Retirement Board is

Affirmed.

2. 45 U.S.C.A. § 228a(b) (c).

3. 45 U.S.C.A. § 351(d) (e).

4. 26 U.S.C. § 3231(b) (d).