Gertrude SMITH, Petitioner,

v.

**RAILROAD RETIREMENT BOARD,**
Respondent.
No. 17498.

United States Court of Appeals
Fifth Circuit.
May 19, 1959.

Joseph W. (Joe) Burkett, San Antonio, Tex., for petitioner.

Myles F. Gibbons, Gen. Counsel, David B. Schreiber, Associate Gen. Counsel, R. R. Retirement Bd., Chicago, Ill., for respondent. Paul M. Johnson, Richard F. Butler, R. R. Retirement Bd., Chicago, Ill., of counsel.

Before JONES, BROWN and WISDOM, Circuit Judges.

JONES, Circuit Judge.

The Railroad Retirement Board, the respondent here, determined that the petitioner, Mrs. Gertrude Smith, was not eligible for a widow's annuity under Section 5(a) of the Railroad Retirement Act, 45 U.S.C.A. § 228e(a). Her petition for review of the Board's decision is before us.

The petitioner and Aaron Q. Smith were married in 1913. He was an employee of the Texas and New Orleans Railroad Company, at San Antonio, Texas, for many years. His last service with the Railroad was on March 3, 1951. On August 11, 1955, Smith filed an application with the Board for an annuity. In the application he stated that he and the petitioner were married but that they were "not living together". The address given was not that where his wife lived and where he had formerly lived with her. Smith died on January 14, 1956. Soon thereafter Mrs. Smith filed the claim for a widow's annuity which instituted the proceeding now before us.

Among the requirements for qualification as "widow" within the meaning of the widow's annuity provisions of the Act, is a provision that the surviving wife of her railroad employee husband must have been "living with" the husband at the time of his death. 45 U.S. C.A. § 228e($l$) (1). By the statute, "A widow shall be deemed to have been living with her husband at the time of his death if they were both members of the same household on the date of his death, or she was receiving regular contributions from him toward her support on such date, or he had been ordered by any court to contribute to her support." 45 U.S.C.A. § 228e($l$) (1), 42 U.S.C.A. (1952 ed.) § 416(h) (2).

In her application Mrs. Smith gave a negative answer to the question whether she and her deceased husband were living together at the same address at the time of his death. Answering the question as to why they were not living together she stated that "He was an alcoholic and left me approximately 3 years ago. During this period he did not help me but I gave him clothes and money to eat on." In her application it was also stated that "In addition to helping him by furnishing clothes and money for food, I paid his union dues to the Brotherhood Railway Carmen of America, Local No. 756, and his driver's license in

hopes that he would recover and be able to use them again. Although we were not living together he received mail at my home and prior to my son's death, six months ago, I would send the mail by him".

From Mrs. Smith's application and affidavits and other instruments submitted to the Board it was represented that Smith was, for a long time, a good husband and an industrious worker but he became an alcoholic addicted to wine. He had a long record of arrests for being drunk. For several years, while he and his wife were together, he was frequently brought home by police. On two occasions, on February 14, 1950, and May 11, 1950, he was examined at the county jail by the county health physician, Dr. G. D. Boyd, who gave his opinion in a three-line report "that he was definitely insane and did not know the difference between right and wrong." Before leaving the dwelling he shared with his wife, he struck her on one or more occasions and broke her glasses several times. He sold some of his wife's chickens, some of her clothing, and his tools, to get money with which to buy liquor. During the latter part of his life he did lawn and garden work for Mrs. L. A. Glascock who paid him small sums for his work and sometimes gave him small sums of money when there was no work. She gave him food and had supplied him with blankets. He gave her address for receiving mail. During the last year of his life Smith frequently begged from strangers for money to buy food and drink. Sometimes he slept under shrubbery and sometimes in an alley, but more often in a junked car. He died on January 14, 1956, from suffocation as the result of a fire in the junked car in which he was sleeping. His first annuity check was issued about the time of his death but had not been received by him.

■ Mrs. Smith makes the contention that "living together" is a status which once in existence, can only be changed by one having the mental capacity of making a change and that her husband was insane and lacking in that capacity with

the result that there was a constructive status of living together at the time of the death of her husband. Living together is a factual situation which may affect status but it is not of itself a status. Thus the living together by a man and woman who are free to marry may establish the status of common law husband and wife. On the other hand the living together by a grandparent and an orphan grandchild may establish the relationship of a so-called natural guardianship but, under such circumstances, a legal status would not arise. 2 Beale, Conflict of Laws, 651. We do not think, however, that the answer to the question here considered depends upon whether living together is, as a matter of law, a status. We are not required to hold, in our decision of this case, whether insanity of one spouse or the other may not prevent a separation of the parties from terminating their "living together" within the meaning of that term as it is used in the statute.

The Board made no specific findings as to the mental condition of Smith. It did comment, in its decision, that Dr. Boyd's last examination of Smith was ten months prior to the time he ceased to be an employee of the railroad and nearly two years before he and his wife ceased to live together. The Board made note of the ability of Smith to make intelligent responses to the questions in his application for a retirement annuity. There is, we think, implicit in the Board's decision a finding that Smith had the mental capacity to form and did form an intent to live apart from his wife.

■ The findings of the Board were supported by substantial evidence and no error of law in its proceedings and decision is shown. Its determination should be affirmed. Freeman v. Railroad Retirement Board, 5 Cir., 1951, 192 F.2d 51, certiorari denied 343 U.S. 909, 72 S. Ct. 640, 96 L.Ed. 1326; Squires v. Railroad Retirement Board, 5 Cir., 1947, 161 F.2d 182; Welborn v. Railroad Retirement Board, 5 Cir., 1945, 151 F.2d 448; South v. Railroad Retirement Board, 5

Cir., 1942, 131 F.2d 748, certiorari denied 317 U.S. 701, 63 S.Ct. 525, 87 L.Ed. 561.

■ The Board's determination that the petitioner was not living with her husband at the time of his death is free from error. The decision of the Board is

Affirmed.