289 F.2d 386
 Maude R. MURRAY, Petitioner,
v.
RAILROAD RETIREMENT BOARD, Respondent.
In re Maude R. Murray, widow of Frederick Thomas Murray, (RRB No. A-229773, SSA No. hrg-sl-ptde.
 No. 8310.
 United States Court of Appeals Fourth Circuit.
 Argued April 11, 1961.
 Decided April 29, 1961.
 
 McEachin, Townsend & Zeigler, Florence, S. C. (E. N. Zeigler, Florence, S. C., on brief), for petitioner.
 Ernest O. Eisenberg, Attorney, Railroad Retirement Board, Chicago, Ill. (Myles F. Gibbons, General Counsel; David B. Schreiber, Associate General Counsel, and Louis Turner, Attorney, Railroad Retirement Board, Chicago, Ill., on brief), for respondent.
 
 
 1
 Before SOPER and BOREMAN, Circuit Judges, and HARRY E. WATKINS, District Judge.
 
 
 2
 HARRY E. WATKINS, District Judge.
 
 
 3
 Petitioner here seeks a review of a decision of the respondent, Railroad Retirement Board, entered January 18, 1960. The question is whether Maude R. Murray, petitioner, is entitled to any payments under the Railroad Retirement Act other than the widow's insurance annuity awarded her effective February 1, 1958, upon the death of her husband. We answer the question in the negative, and affirm the decision of the Board.
 
 
 4
 Review of the Board's decision in this Court is authorized by Section 11 of the Railroad Retirement Act (45 U.S.C. A. § 228k), which incorporates by reference the provisions pertaining to judicial review, set forth in Section 5(f) of the Railroad Unemployment Insurance Act [45 U.S.C.A. § 355(f)].
 
 
 5
 Petitioner claims that the sum of $2,890.95 is due her under the Railroad Retirement Act of 1937 (50 Stat. 307, as amended, 45 U.S.C.A. §§ 228a-228z), by reason of the fact that her late husband, Frederick T. Murray, was an insured employee under the Act.
 
 
 6
 The facts are not in dispute and may be stated as follows: On December 30, 1937, Frederick T. Murray, the employee, could have elected a single-life annuity, which would have paid him $91.40 per month upon retirement on November 1, 1945, with no annuity to his widow; or he could have elected a joint and survivor annuity of $68.70 monthly, which included an additional provision that if his wife survived him, she would receive a monthly annuity of $34.35 for the remainder of her life. He wanted the additional protection for his wife, and elected the latter, under the provisions of Section 4 of the Act of 1937 (45 U.S.C. 1940 ed. § 228d), then in effect, which provided that such election, once made, was irrevocable, all of which was explained to the employee and understood by him.
 
 
 7
 At the time the employee made such election, the Act contained no other provision for awarding his wife an annuity after his death. On July 31, 1946, the Act was amended by the deletion of the provisions of Section 4, relating to the election of a joint and survivor annuity, and by adding a new Section 5, establishing a joint and comprehensive program of insurance annuities for the surviving widows, children and dependent parents of deceased employees, Public Law 572 (45 U.S.C. 1946 ed. §§ 228d, 228e). These new annuities were patterned after the Social Security Act, 42 U.S.C.A. § 301 et seq. and were calculated separately from the retirement annuities.
 
 
 8
 There was no statutory authority for the revocation of the employee's election until October 30, 1951, when the Act was amended, Public Law 234 (45 U.S.C. A. § 228v). Consequently, requests made by the employee prior to October 30, 1951, to revoke his election of the joint and survivor annuity were denied. The Amendment of 1951 provided:
 
 
 9
 "All joint and survivor annuities heretofore and hereafter awarded shall be governed by the law under which the election of the joint and survivor annuity was made, except that the individual who made the election shall have the right to revoke the same in such manner and form as the Board may prescribe.
 
 
 10
 "* * * Upon revocation of the election, * * * as herein provided, the individual's annuity shall be increased to the amount which would have been payable had no election been made; such increased annuity shall * * * begin to accrue on the first of the calendar month following the calendar month in which the election was revoked * * * but not before November 1, 1951."
 
 
 11
 The employee was notified of this amendment, and on January 14, 1952, filed with the Board a written revocation of his prior election to receive a joint and survivor annuity. This revocation contained the following statement:
 
 
 12
 "After careful consideration, I hereby revoke the election made by me under Section 4 of the Railroad Retirement Act of 1937 * * * to have my retirement annuity reduced in order to provide a survivor annuity for my wife * * * at my death. In making this revocation, I fully understand that my wife * * * will not receive a survivor annuity after my death, which otherwise would have been payable by reason of the election which I previously made. * * * "I understand further that the increase in my annuity due to the cancellation of my election will not begin to accrue earlier than the first of the month following the month in which the cancellation of the election is received by the Board. In any event, the increase cannot begin to accrue before November 1, 1951."
 
 
 13
 Effective February 1, 1952, the monthly rate of the adjusted single annuity (which had been increased from $91.40 to $126.76 per month) was paid to him. On July 1, 1956, this amount was increased to $139.62, and was paid to him until his death on February 22, 1958.
 
 
 14
 From 1952 until his death, the employee claimed that he was entitled to the single annuity, not from February 1, 1952, but from November 1, 1945. He claimed that from 1945, the date he began to receive benefits under the joint and survivor annuity, until 1952, when this was revoked in favor of the larger single annuity, that neither he nor his wife received anything of value, and that, notwithstanding his election in 1945 to receive the smaller annuity, with protection for his wife, he was entitled to receive the larger single annuity. He asked that the Board pay him in a lump sum the difference between what he received under the joint and survivor annuity and what he would have received from 1945 to 1952 under the larger single annuity. In effect, he claims that during this period of seven years, while the joint and survivor annuity was in operation, he did not die and that neither he nor his wife received any benefits in compensation for the reduced annuity. After his death, the widow made the same claim, and again the claim was refused, resulting in this action.
 
 
 15
 The Board found, and we think correctly, that there were two answers to this claim. (1) Until the employee revoked his election, petitioner, as his wife, had the equivalent of an insurance protection for which he paid by having his own annuity reduced, and if he had died at any time before February 1, 1952 (the date of his revocation of such annuity), she would have received the benefit of such protection. Furthermore, had the employee not revoked his election in 1952, petitioner would have received a survival annuity, as well as a widow's insurance annuity under the 1946 Act, which latter annuity she is still receiving. (2) The amendment of 1951, giving the employee the right to revoke his election, expressly limited the time when the transfer from the dual annuity system to the single annuity system would take place. It provided that the full single annuity, authorized upon revocation of an election, shall in no event begin to accrue prior to the first of the calendar month following the calendar month in which the election was revoked, and in no event prior to November 1, 1951. This makes it clear that the amendment was not retroactive to 1945. The statement signed by the employee, quoted above, shows that he understood that his payments under the single annuity could not begin until February 1, 1952. The decision upon these points makes it unnecessary to consider other matters discussed in the opinion of the Board.
 
 
 16
 It is clear that the employee and petitioner possessed only such rights to benefits under the Railroad Retirement Act as were established for them by such Act, and that in seeking such rights they were subject to and bound by the statutory limitations imposed upon them. Scott v. Railroad Retirement Board, 7 Cir., 227 F.2d 684, 686. It is also equally clear that the claim of the petitioner is based upon a misconception of the law and facts, and a misinterpretation of the Act. In the case of Marr v. Railroad Retirement Board, 4 Cir., 206 F.2d 47, 49, this Court said:
 
 
 17
 "It is well settled that upon judicial review of a decision by the Board on a claim for benefits under the Railroad Retirement Act, the function of this court is limited to determine whether the findings of the Board are based upon substantial evidence in the record and its conclusions consonant with law. Dunne v. Railroad Retirement Board, 7 Cir., 183 F.2d 366, certiorari denied, 340 U.S. 854, 71 S. Ct. 71, 95 L.Ed. 626; Monahan v. Railroad Retirement Board, 7 Cir., 181 F.2d 751; Squires v. Railroad Retirement Board, 5 Cir., 161 F.2d 182."
 
 
 18
 We conclude that the Board's findings are not only based upon substantial evidence and its conclusions are consonant with the law, but further find that the claim is wholly without merit.
 
 
 19
 Affirmed.