Mary S. COOPER, Petitioner,

v.

**RAILROAD RETIREMENT BOARD,**
Respondent.

No. 17859.

United States Court of Appeals
Eighth Circuit.

Aug. 24, 1965.

James P. Rielly of Spayde & Rielly, Oskaloosa, Iowa, made argument for petitioner and filed brief with Robert J. Spayde, Oskaloosa, Iowa.

Myles F. Gibbons, Gen. Counsel, Railroad Retirement Board, Chicago, Ill., made argument for respondent and filed brief with David B. Schreiber, Associate Gen. Counsel, Railroad Retirement Board, Chicago, Ill., and Edward E. Reilly and O. Marvin Funk, Railroad Retirement Board, Chicago, Ill.

Before VOGEL, MATTHES and RIDGE, Circuit Judges.

RIDGE, Circuit Judge.

Petition to review a decision of the Railroad Retirement Board, denying petitioner's application for a widow's insurance annuity made pursuant to § 5(a) of the Railroad Retirement Act (45 U.S.C.A. § 228e(a)) (Act) on the ground that petitioner and the employee were not living together as "members of the same household" at the time of his death. Right to such review is authorized by § 11 of the Act, as amended August 28, 1958. (45 U.S.C.A. § 228k) and § 5(f) of the Railroad Unemployment Insurance Act (45 U.S.C.A. § 355(f)).

Section 5(a) of the Railroad Retirement Act, supra, provides, in part, that "[a] widow * * * of a completely insured employee, who will have attained the age of sixty," shall be entitled to an annuity. To qualify for a widow's annuity under the Act: § 5(*l*) (1) (i) thereof (45 U.S.C.A. § 228e(*l*) (1) (i))

provides that the " * * * 'widow' shall have been living with the employee at the time of the employee's death," and, that the " 'widow' * * * shall be deemed to have been living with the employee if the conditions set forth in section 216(h) (2) * * * of the Social Security Act, as in effect prior to 1957, are fulfilled."

Section 216(h) (2) of the Social Security Act, as in effect prior to 1957 (42 U.S.C.A. 1952 ed. § 416(h) (2)), provided that " * * * a widow shall be deemed to have been living with her husband at the time of his death if they were both members of the same household on the date of his death, or she was receiving regular contributions from him toward her support on such date, or he had been ordered by any court to contribute to her support."

The exclusiveness of the above conditions establishing the right of a widow to receive an "annuity" under the Railroad Retirement Act was recently recognized by this Court in Matthies v. Railroad Retirement Board, 341 F.2d 243 (8 Cir., 1965), and previously in Wheeler v. Railroad Retirement Board, 184 F.2d 173 (8 Cir., 1950). Also, see Ladish v. Railroad Retirement Board, 339 F.2d 590 (5 Cir., 1964); Smith v. Railroad Retirement Board, 267 F.2d 369 (5 Cir., 1959); Freeman v. Railroad Retirement Board, 192 F.2d 51 (5 Cir., 1951, cert. den. 343 U.S. 909, 72 S.Ct. 640, 96 L.Ed. 1326 (1952)). Cf. Colbert v. Hobby, 130 F.Supp. 65, 60 A.L.R.2d 1076 (S.D.N.Y.1955); aff'd Colbert v. Folsom, 230 F.2d 846 (2 Cir., 1956).

In the light of what was said by this Court in Matthies v. Railroad Retirement Board, supra, there can be no question concerning the proposition that a husband and wife who are separated and not "living with" each other at the time of the insured's death cannot be said to be "members of the same household," as provided in § 216(h) (2) of the Social Security Act, as in effect prior to 1957, supra.

In the case at bar the undisputed facts appear as stated in respondent's brief:

Petitioner and the insured employee were married in 1944. According to the petitioner, the employee deserted her in August 1951. At that time they apparently had been living in a farm house which petitioner had inherited from her father. On June 10, 1954, the employee filed a petition for divorce, in which he indicated that his wife and he had not lived together after August 1951. In a cross-petition for divorce filed on June 23, 1954, petitioner stated that she and the employee had "ceased living together as wife and husband" during August 1951; that the employee had deserted her during that month, and that such desertion had continued down to June 23, 1954.

In June 1954, the month in which his divorce petition was filed, the insured employee went to California to visit his daughters. He remained in California for approximately six weeks, returning to Oskaloosa, Iowa, about the last of July or the first of August, 1954. Very shortly, probably on the second day, after his return from California the insured employee entered a hospital in Kirksville, Missouri, approximately 125 miles from Oskaloosa. Petitioner did not accompany him to Kirksville. The employee died in the hospital *ante,* on August 12, 1954.

"Notwithstanding the statements in the employee's petition for divorce, and in her own cross petition, to the effect that the petitioner and the employee had not lived together after August 1951, the petitioner contended that she visited the employee, and stayed overnight with him, at an apartment which he had taken in Oskaloosa some time after August 1951, and that she should therefore be regarded as 'living with' him there. However, she maintained her own household, apart from the employee, at the farmhouse which she had inherited from her father. Her statements with regard to the Oskaloosa apartment were conflicting. While the petitioner submitted affidavits from a number of individuals to corroborate her contention that she was living with the employee at the time of his death, the statements in these affidavits were mostly of a general nature. On the other hand, the employee's daughter by a previous marriage furnished a statement to the effect that following the separation of her father and stepmother in 1951 she had visited them 'at their separate places of residence.' She also stated that 'Mary Cooper was not living with him at time of death, because I visited her and it was mentioned that they were not living together.' The employee's landlady in Oskaloosa stated that the petitioner and the employee 'at no time lived together while he lived at' the apartment. She added that the petitioner did not have a key to the apartment, and that following the employee's death the petitioner had asked to be admitted to the apartment.

"It appears that the employee had no income other than his railroad retirement annuity. The annuity had begun to accrue in November 1945 and in November 1951 the amount was increased to $110.81. In his petition for divorce filed June 10, 1954, the employee stated that because of his poor health he was 'unable to work and contribute to his own support.' Petitioner, on the other hand, was evidently a person of some means. According to her cross petition for divorce, she was the owner of certain real estate acquired solely from her own funds or through inheritance; she stated that she was 'the owner of an automobile, household furnishings, tavern and restaurant equipment, supplies and inventory located in the Town of Eddyville, Iowa and at two locations in the City of Oskaloosa, Iowa, certan contracts, accounts receivable and cash.' Peti-

tioner also stated in her cross petition for divorce that the employee was indebted to her for funds advanced to him 'for taxes, insurance and necessaries.' During the adjudication of her case by the Board's bureau of retirement claims the petitioner had indicated on a form that the employee was contributing to her support at the time of his death, and she stated that he 'contributed to my support by bringing groceries and buying me clothing all the time.' In her appeals to the Appeals Council and to the Board, however, she did not indicate that the employee contributed to her support. It appears that the petitioner claimed the employee as a dependent in income tax returns for the years 1947, 1948, 1949, 1950, 1951, 1952 and 1953."

■ In the light of the above established facts appearing in the record before us, and what is said by this Court in the Wheeler and Freeman cases v. Railroad Retirement Board, supra, it is manifest there is no merit to petitioner's singular contention that "The Board's finding that at the time of the employee's death, that he and the Petitioner were not 'living with' each other, (is) not based upon substantial evidence and said finding has no reasonable basis in law."

Section 5(f) of the Railroad Unemployment Insurance Act, which is incorporated by reference in Section 11 of the Railroad Retirement Act, both supra, provides: "The findings of the (Railroad Retirement) Board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive." 45 U.S.C.A. § 355(f). This principle has been recognized and affirmed in Railway Express Agency, Inc. v. Railroad Retirement Board, 250 F.2d 832, 836 (7 Cir., 1958), cert. den. 356 U.S. 967, 78 S.Ct. 1005, 2 L.Ed.2d 1073 (1958); Lowe v. Railroad Retirement Board, 294 F.2d 115, 116 (9 Cir., 1961); Brotherhood of Railway and Steamship Clerks, etc. v. Railroad Retirement Board, 99 U.S.App. D.C. 217, 239 F.2d 37, 43, 44 (D.C.Cir.,

1956); and Marr v. Railroad Retirement Board, 206 F.2d 47, 49 (4 Cir., 1953); and is applicable here.

Therefore, the decree of the Railroad Retirement Board, review of which is here sought, is in all things

Affirmed.