Viola COLBERT, Plaintiff,

v.

Oveta Culp HOBBY, Secretary of Health, Education and Welfare, Defendant.

United States District Court,
S. D. New York.

April 6, 1955.

Elizabeth Robinson, New York City, for plaintiff.

J. Edward Lumbard, New York City, by Samuel R. Pierce, Jr., New York City, of counsel, for defendant.

EDELSTEIN, District Judge.

In an action by plaintiff to review a decision by a referee of the Social Security Administration, the defendant[1] has moved and the plaintiff has cross-moved for summary judgment. The basic facts are not in dispute. The referee's decision denied the plaintiff's application for a lump sum death payment on the ground that she was not "living with" the wage earner at the time of his death in 1949, within the meaning of the former §§ 202(g) and 209(n) of the Act.[2] The payment was applied for and awarded to the decedent's sister, as the person equitably entitled to it under the former § 202(g), inasmuch as she had paid his burial expenses. The Appeals Council of the Social Security Administration denied plaintiff's request for review of the referee's decision, which thereupon became the final decision of the Administration, subject to judicial review under § 205(g), 42 U.S.C.A. § 405 (g).

The former § 202(g) provided for lump sum death payments to the person determined to be "the widow * * * of the deceased and to have been living with the deceased at the time of death." 60 Stat. 987. And the former § 209(n) defined a widow to have been "living with" her husband if, at the time of his death, they were both members of the same household, or if she was receiving regular contributions from him toward her support on such date, or if he had been ordered by any court to contribute to her support. The plaintiff was not a member of the same household as her husband, for he had wrongfully deserted her many years before his death. Nor was she receiving any regular contributions from him for her support. There is a dispute about whether the plaintiff fulfilled the third definition of "living with" because in 1924 the Criminal Court of Atlanta, Georgia issued an order requiring the husband to make certain payments as a condition to probation in lieu of a 12-month sentence imposed upon him for the abandonment of a child of the marriage.

But the plaintiff's major contention is that a deserted wife may not be deprived of any benefits under the Act and that Congress never intended to permit a wage earner, by his voluntary, unilateral misbehavior to accomplish such a result. Thus, she argues that a

---

1. Originally, the Social Security Administrator was named as defendant, but after that office was abolished the Administration was placed under the direction of the Secretary of Health, Education and Welfare, who was substituted.

2. Since the death of the plaintiff's husband and her application for the lump sum payment occurred in 1949, the references are to the Social Security Act, as amended, prior to the 1950 amendments. However, the 1950 amendments made no relevant changes in the applicable provisions. See 42 U.S.C.A. §§ 402(*l*) and 416(h) (2).

wife who has been wrongfully abandoned by her husband must nevertheless be regarded as "living with" him, under a rule deeply rooted in our system of law that she is entitled to all the benefits that flow from the marital status. To deprive a wrongfully abandoned widow, and here one who is also impoverished and incapacitated, of a monetary payment growing out of her husband's death does indeed appear to be harsh. Certainly, it goes without saying that a husband ought to support his wife, and that a wife's right to support is a benefit that stems from her marital status. But the right to the lump sum payment under the Act is not, like support, a benefit flowing merely from the marital status. It is a benefit that flows from suffering a statutorily identifiable economic detri-

ment, and is not necessarily or entirely dependent upon marital status. In discussing the former § 202(g), the report of the Senate Committee on Finance explained that the addition of the "living with" requirement to the section (as it was already defined in former § 209(n), in application to other benefits containing the requirement), " * * * will prevent the payment of a lump sum to an estranged or deserted spouse while those who have assumed the cost of the last illness and burial receive nothing." [3] Provision was also made in the former § 202(g) for the payment of the lump sum in the contingency that there was no spouse living with the deceased individual at the time of death, in which event the sum was directed to be paid to the person or persons equitably entitled to it

3. U.S. Code Cong.Service, 1946, p. 1541, Sen.Rep.No. 1862 on H.R. 7037, Committee on Finance, 79th Cong., 2nd Sess. (July 27, 1946), page 30.

The plaintiff contends that the committee report cannot be "controlling" because it is an attempt to interpret the law in § 209(n), defining the phrase "living with", enacted by a different Congress more than 10 years previous. Basic to this contention is the assertion that the phrase "living with" had been construed "by the courts" as fully protective of the rights of an abandoned widow under §§ 202(d) and (e), of the Act. Hence, to construe the same phrase in § 202(g) as not protective of those rights would be to change the original meaning of the definition in § 209 (n). In Kandelin v. Kandelin, D.C., 45 F.Supp. 341, 345, the court uttered the dictum that §§ 202(d) and (e) "did not intend to foreclose [the abandoned widow's] rights if she was not living with the deceased at the time of his death if the cause of her leaving him was due primarily to the conduct of the deceased." However, I have discovered no case with a holding to that effect, and plaintiff's counsel has indicated that she has found only one reported case involving abandonment by the wage earner. Richards v. Social Security Administration, D.C., 76 F.Supp. 12.

The Kandelin case, which was affirmed in Kandelin v. Social Security Bd., 2 Cir., 136 F.2d 327, 147 A.L.R. 596, was decided before the addition of the "living with" requirement to § 202(g). At that time, the widow was entitled to the lump sum payment, and § 209(m) defined the widow in terms of the law applied in determining the devolution of intestate personal property by the courts of the State in which the insured individual was domiciled. The court, in interpreting the definition of "widow" under that section, declared that under the law of the domicile (New York) she might be disqualified from sharing her husband's estate by her own misconduct, and thereby fail to qualify as a "widow" under § 209(m). The plaintiff urges that the addition of the "living with" requirement did no more than prevent a deserting wife to qualify as a widow in those states where she would not be disqualified from intestate succession by her own misconduct; and that it was not intended to deprive an abandoned wife of any benefits under §§ 202(d) and (e). Thus, the addition of the "living with" requirement in § 202(g) would merely relate to the definition of "widow" in § 209(m), a roundabout means to the end. But it seems much more likely and in accordance with the explicit language that the Congressional intention was to accomplish more than to allow qualification for the lump sum payment under an amended definition of "widow". Indeed, it seems quite apparent that the intention was to apply the same federal test to lump sum cases as already applied to the monthly benefit cases. And there has been no demonstration that this change deprives an abandoned wife of any rights under §§ 202(d) and (e), a point, of course, which is not here for decision.

in the proportion and to the extent that he or they shall have paid the burial expenses. This provision prevented the lump sum from becoming a windfall to persons who may have suffered no economic loss by reason of the wage earner's death. Report of the Senate Committee on Finance, supra.

██ It seems clear, therefore, that the payment of the lump sum death benefit is dependent on more than marital status. It is dependent upon an economic loss suffered by the wage earner's death, and Congress has indicated those conditions of the marital status which must be held to give rise to the economic detriment contemplated by the legislation. The regulations promulgated under the statute do not provide for payment of the lump sum to a wrongfully deserted widow.[4] The regulations constitute a contemporaneous administrative construction and are entitled to great weight. United States v. American Trucking Ass'ns, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345; Fawcus Machine Corp. v. United States, 282 U.S. 375, 378, 51 S.Ct. 144, 75 L.Ed. 397. Moreover, inasmuch as Congress in 1950 re-enacted precisely the same definition of "living with" in the case of a wage earner's wife or widow as it had originally enacted in 1939, without disapproval of the regulations promulgated thereunder, those regulations have added sanction. Commissioner of Internal Revenue v. Wheeler, 324 U.S. 542, footnote 10, at page 547, 65 S.Ct. 799, 89 L. Ed. 1166.

██ But the plaintiff contends that in any event she qualifies under the "living with" definition on the ground that her husband had, in 1924, been ordered by a criminal court in Atlanta, Georgia, to contribute to her support. It appears that her husband had been convicted of the abandonment of their minor child and given a 12 month jail sentence. He was placed on probation and the pertinent part of the order is quoted in the margin.[5] The plaintiff argues that the

---

4. The regulations were adopted pursuant to express statutory authority, §§ 205(a) and 1102, 42 U.S.C.A. §§ 405(a) and 1302; and Social Security Administration Regulations No. 3, § 403.834 (201 C.F.R. 403.-834), effective in January, 1940, defines the phrase "living with" as follows:

"Definition of 'living with': Wife or widow.—A wife shall be deemed to be 'living with' her husband at the time of [sic] her application for a benefit is filed, and a widow shall be deemed to have been living with her husband at the time of his death, if, at such time, either of the three following conditions exist:

"(a) The husband and wife were at such time members of the same household.

"A husband and wife were members of the same household if they were living together, and customarily lived together, in the same place of abode.

"A husband and wife who customarily lived together in the same place of abode but who were not actually doing so at such time, may nevertheless be members of the same household, if they were apart only temporarily and intended to resume living together in the same place of abode.

"(b) If the wife was at such time receiving regular contributions from her husband toward her support.

"Contributions must be substantial, and may be made in cash or other medium. In determining the sufficiency of contributions under this subsection, the surrounding circumstances with respect to both the time when contributions are made and the amount thereof shall be taken into consideration.

"(c) If the husband had, at such time been ordered by any court to contribute to his wife's support.

"This condition is met if the husband is legally obligated to contribute to the support of his wife at such time by virtue of any order, judgment, or decree of a court of competent jurisdiction, regardless of whether he actually made any such contribution. In determining the existence of such a legal obligation, any such order, judgment or decree shall be considered as in full force and effect unless it has expired or has been vacated."

5. "The probationer while thus under the supervision of the Court shall pay a fine of restitution or reparation or family support through Probation Office to Viola Colbert to the amount of $2.50 a week for 6 months, then $3.00 week. (Manner of payment) Every week. Also $10.10 Municipal Court Cost.

words requiring the probationer to pay "family support * * * to Viola Colbert" mean that he was required by the order to support both his wife and child. But the referee found that the order was one for the support of the child, and there is substantial evidence to support his inference and conclusion.[6] A perusal of the order can leave little doubt of its intent. But even the provision for the support of the child was expressly limited to the period of probation, which was the same as the term of the sentence. Therefore, assuming the order to have been for the support of the plaintiff, it was not in effect on the date of the wage earner's death in 1949. It is true that the former § 209(n) does not explicitly require the court order to be in effect on the date of the wage earner's death, as it does for the conditions of membership in the same household and the receipt of regular contributions from him toward support. But § 403.834 of Regulations No. 3 [7] does require the order to be in effect at the time of death.[8] It appears to be quite reasonable under the terms of the statute and not inconsistent with its purposes.[9] And here again, the validity of

"The probationer shall work regularly and support his child, and report in person weekly to the Probation Officers a true and correct statement of his earnings and also as to his general welfare, and conduct.

"The Court reserves the right to revoke this Order admitting the defendant to probation at any time the Court in its discretion believes the conduct of the defendant to justify it."

6. "This same finality [that extends to findings of fact] extends to the Board's inferences and conclusions from the evidence if a substantial basis is found for them. * * *" United States v. La-Lone, 9 Cir., 152 F.2d 43, 44.

7. Quoted in footnote 4, ante; section (c) of the definition.

8. Richards v. Social Security Administration, 76 F.Supp. 12, is cited by the plaintiff in support of the contention that the requirements of the Act are met if the wage earner has at any time been ordered by a court to contribute to plaintiff's support. The court there did express disapproval of a construction that the order contemplated by the statute was one which had not expired, by virtue of its own time limitation or for any other reason, on the ground that it was unreasonable to put the burden, either on the court or one of the parties litigant, to see that the order was kept alive until the death of the absent husband. However, the decision is not broad enough to support plaintiff's contention. The facts in the case involved a Massachusetts statute limiting the effectiveness of a support order to a term not exceeding six years, and a husband who had absented himself from the jurisdiction. The court indicated, as a basis for its decision, that the husband's flight from the jurisdiction effected a suspension of the time limitation, and in addition said that the statute was intended as a limitation on the power of the court to adjust proceedings between two living individuals and was inapplicable to a matter under the Social Security Act. Judge Bicks, in a case involving widow's insurance benefits under 42 U.S.C.A. § 402(e)(1)(D), to which the same "living with" requirement is applicable, held that the regulation requiring the court order to be in full force and effect at the time of the wage earner's death was reasonable, fairly reflecting the intendment of the Act. Stuart v. Hobby, D.C.S.D.N.Y., 128 F.Supp. 609. The opinion did not consider the Richards case.

9. The plaintiff puts a hard hypothetical illustrating a situation wherein the purposes of the statute would be sorely strained by a strict adherence to the regulations. Assume that a husband and wife live together for 20 years and the husband then wrongfully deserts the wife. Months elapse before the wife has been able to locate the husband and before there has been a decision on her application for support, the husband dies. The widow would receive nothing because she was not physically dwelling in the same household with the husband at the time of his death, he was not contributing to her support, and there was no court order.

But on the other hand, consider the hypothetical put by Judge Bicks in the Stuart, case, supra, note 8. Suppose a widow once obtained an order for alimony pendente lite, but ultimately a final judgment denied her permanent alimony. Under the plaintiff's position, she would be entitled to benefits under the Act.

Of course, no hypothetical case is presented for decision, And the validity of

the regulation is reinforced by the Congressional reenactment of the "living with" definition without disapproval of the regulations previously promulgated.

There is, therefore, substantial evidence on the record as a whole to sustain the administrative finding that the plaintiff was not "living with" her husband at the time of his death, within the meaning of the Act, nor does such a finding, in my opinion, result from a misconstruction of the law. Accordingly, the defendant's motion for summary judgment will be granted and the plaintiff's denied.

the regulations need not rest upon their ability to cover reasonably the last straggler in a parade of horribles. Nor is the court or the administrative agency entirely powerless to deal with an outrageously inequitable situation when it is presented.