Theresa L. MATTHIES, Petitioner,

v.

**RAILROAD RETIREMENT BOARD,**
Respondent.

No. 17741.

United States Court of Appeals
Eighth Circuit.

Jan. 28, 1965.

244

John L. Sheridan and C. Thomas Carr, of Sheridan, Baty, Markey, Sanders, Edwards & Carr, Kansas City, Mo., and Robert G. Knapp, Mission, Kan., submitted briefs without oral argument, for petitioner.

Myles F. Gibbons, Gen. Counsel, Railroad Retirement Board, Chicago, Ill., made argument for respondent and filed brief with David B. Schreiber, Assoc. Gen. Counsel, and Edward E. Reilly and Richard D. Quinlan, Railroad Retirement Board, Chicago, Ill.

Before VOGEL, MATTHES and RIDGE, Circuit Judges.

VOGEL, Circuit Judge.

We are presented here with a petition to review, set aside and reverse an order of the Railroad Retirement Board denying to the petitioner a widow's insurance annuity under the Railroad Retirement Act. Review is sought by virtue of the provisions of § 11 of the Railroad Retirement Act of 1937, as amended July 31, 1946, 45 U.S.C.A. § 228k and § 5(f) of the Railroad Unemployment Insurance Act, as amended August 28, 1958, 45 U.S. C.A. § 355(f).

Theresa L. Matthies, the petitioner, resides in Kansas City, Jackson County, Missouri. She was married to Fred J. Matthies, the subject railroad employee, on December 5, 1932, in Kansas City, Kansas. On June 6, 1940, petitioner filed a suit for separate maintenance against Fred J. Matthies in the District Court of Wyandotte County, Kansas, said suit being entitled "Thresa L. Matthies, Plaintiff v. Fred J. Matthies, Defendant", bearing docket No. 59830–A in said court, and on July 11, 1940, upon the motion of petitioner, the said court ordered the defendant to pay to the petitioner the sum of $5 per week as and for temporary alimony commencing July 5, 1940, until further order of the court. On June 28, 1958, some 18 years thereafter, an entry was made on the ledger sheet of said case stating, "Cause dismissed for want of prosecution" and judgment for costs was at that time entered against the plaintiff (petitioner herein).

On July 30, 1960, Fred J. Matthies, the employee, died at St. Peter's State Hospital, St. Peter, Minnesota, having in the meantime consummated a bigamous marriage with one Gusta (Davis) Matthies in December 1941, at Blair, Nebraska, and with whom he lived until confined as a mental incompetent in July 1951. Petitioner herein stated that she and Matthies separated in the fall of 1939 and that after their separation she "did not maintain contact in regard to his whereabouts" and that "to the best of [her] knowledge" she was his "legal widow". Matthies last worked June 8, 1951, at St. Paul, Minnesota, as a machinist employed by the Chicago, Milwaukee, St. Paul & Pacific Railroad Company.

On December 7, 1960, petitioner filed her application for a widow's insurance annuity payable under the Railroad Retirement Act. Thereafter the Bureau of Retirement Claims determined she was not entitled to a widow's insurance an-

nuity. Such determination was sustained by the Appeals Counsel and finally that decision was affirmed by the Railroad Retirement Board, respondent herein, by its decision of July 18, 1963. It should be noted here, however, that Mrs. Matthies, as the legal widow of the employee, was entitled to and did receive a lump sum death payment of the earnings record of Fred J. Matthies as a distributee of his estate, but that she was nevertheless held not entitled to a widow's insurance annuity because she was not "living with" the employee at the time of his death. The decision, based upon the evidence of record, made among other things the following findings of fact:

"3. At the time of the employee's death, the employee was not under an order by any court to contribute to the support of appellant."

"5. Appellant was not 'living with' the employee within the meaning of the Act at the time of his death."

On February 14, 1964, over three and one-half years after Matthies' death, the District Court of Wyandotte County, Kansas, in the aforesaid separate maintenance suit No. 59830–A, "on its own volition and on its own motion", but carrying the notation "Approved: /s/ Robert G. Knapp, Attorney for Plaintiff", made a *nunc pro tunc* order "correcting" its previous order and journal entry dismissing the case for want of prosecution, ordering that it "was not the intent of" the court to vacate the support order of July 11, 1940, and ordering that said support order has been in full force and effect since its entry on July 11, 1940. The said *nunc pro tunc* order was thereafter submitted to respondent. However, as evidenced by respondent's letter dated February 25, 1964, respondent stated that said order did not affect its decision and thereby refused to reverse its order of July 18, 1963.

On July 17, 1964, petitioner filed in this court her petition for review of respondent's decision and of respondent's refusal to reconsider its decision in view of the said *nunc pro tunc* order.

Petitioner's right to receive a widow's insurance annuity under the Railroad Retirement Act arises by virtue of § 228e (*l*) (1) of Title 45, U.S.C.A., which provides:

"(i) a 'widow' or 'widower' shall have been living with the employee at the time of the employee's death;
\* \* \*

"A 'widow' or 'widower' shall be deemed to have been living with the employee if the conditions set forth in section 416(h) (2) or (3), whichever is applicable, of Title 42 are fulfilled."

The applicable portion of § 416(h) (2) of Title 42, U.S.C.A., as in effect prior to 1957, provided that:

" \* \* \* a widow shall be deemed to have been living with her husband at the time of his death if they were both members of the same household on the date of his death, or she was receiving regular contributions from him toward her support on such date, *or he had been ordered by any court to contribute to her support*." (Emphasis supplied.)

Section 237.305 of the regulations of the Railroad Retirement Board, 20 CFR § 237.305, provides:

"A widow shall be deemed to have been living with her husband *at the time of his death* \* \* \* if, *at such time*, any one of the three following conditions existed:
\* \* \* \*

"(c) If, *at such time*, the husband had been ordered by any court to contribute to his wife's support
\* \* \*.

"This condition is met if the husband was legally obligated to contribute to the support of his wife \* \* \* *at such time* by virtue of any order, judgment, or decree of a court of competent jurisdiction, regardless of whether he \* \* \* actually made any such contribution.

*In determining the existence of such a legal obligation, any such order, judgment, or decree shall be considered as in full force and effect unless it had expired or had been vacated."* (Emphasis supplied.)

The regulation is substantially identical with the regulation on the same subject adopted by the Social Security Administrator, 20 CFR, 1949 ed., § 404.-1111. The Railroad Retirement Act itself defines "living with" only by reference to that term in the Social Security Act as in effect prior to 1957.

■■ There can be little doubt but that on July 30, 1960, the date Fred Matthies died, the petitioner herein was not "living with" him under any provisions of the law or regulations applicable thereto. They were (1) not members of the same household, nor (2) was petitioner receiving contributions from him toward her support on such date, nor (3) was there a court order *in existence at that time* ordering the employee to contribute to petitioner's support. The requirement that the court order to contribute to his wife's support be in effect at the time of the employee's death finds full support in Rosewall v. Folsom, 7 Cir., 1957, 239 F.2d 724, 727; Colbert v. Hobby, S.D.N.Y., 1955, 130 F.Supp. 65, 60 A.L.R.2d 1076, aff'd Colbert v. Folsom, 2 Cir., 1956, 230 F.2d 846; and Stuart v. Hobby, S.D.N.Y., 1955, 128 F.Supp. 609. At the time of his death, July 30, 1960, the employee was under no court order directing that he contribute to the petitioner's support, as the temporary alimony order of July 5, 1940, providing for the payment of $5 per week was dismissed on June 28, 1958, for want of prosecution and cost judgment was entered against the plaintiff at that time. Accordingly, the Retirement Board's order and decision of July 18, 1963, could have been nothing more nor less than what it actually was; that is, a denial of a widow's annuity to the petitioner.

■ The only remaining question in the case is what effect did the *nunc pro tunc* order of February 14, 1964, have on the rights of the petitioner. It is petitioner's position that the District Court of Wyandotte County, Kansas, had inherent power to make the *nunc pro tunc* order; that in doing so it properly showed the court's intention not to vacate the support order; and that the *nunc pro tunc* order is conclusive and cannot be collaterally attacked.

It is generally held that:

"An entry nunc pro tunc is an entry made now of something which was previously done, to have effect as of the former date, the function, object, or purpose of such entry being to make the record speak the truth; to supply on the record something which has actually occurred, but has been omitted from the record through inadvertence or mistake. More specifically it has been held that the purpose of a nunc pro tunc entry is to correct mistakes of the clerk or other court officer, or inadvertences of counsel, or to settle defects or omissions in the record, so that it will show what actually took place. It is not, on the other hand, the function of such entry by a fiction to antedate the actual performance of an act which never occurred; or to supply an entire omission to act within the time limit for such action; or to represent an event as occurring at a date prior to the time of the actual event; or to make the record show that which never existed, or to restore a lost record." 21 C.J.S. Courts § 227, pp. 422–23.

That the law of the State of Kansas is in accord with the general rule has been made clear by the Supreme Court of that state in a number of cases. In State ex rel. Hedrick v. Hartford Accident & Indemnity Co., 1941, 154 Kan. 79, 114 P.2d 812, 815, the Kansas court stated:

"We first consider the so-called 'nunc pro tunc' order of October 14, 1940. The order was in fact a modification of the former judgment. * * * The recital in the 'nunc pro tunc' order of October 14th that

it was the court's 'intention' when the order was issued on August 14th to grant custody at that time only until January 1, 1941, does not alter the fact that such an order was not in fact issued. *The function of a nunc pro tunc order is to recite the action theretofore actually taken but not properly or adequately recorded.* 3 Bancroft's Code Practice and Remedies, p. 2259, § 1734; 28 Words and Phrases, Perm. Ed., pp. 983–985; Victory Life Ins. Co. v. Freeman, 145 Kan. 296, 65 P.2d 559; Tincknell v. Tincknell, 141 Kan. 873, 876, 877, 44 P.2d 212. *It cannot be effective to alter, as of the prior date, the action then taken or the order actually made.*" (Emphasis supplied.)

In Hinshaw v. Hinshaw, 1949, 166 Kan. 481, 203 P.2d 201, the Kansas Supreme Court again dealt with the lower court's attempt to change or modify the terms of a prior judgment in a divorce action. At page 205 of 203 P.2d the Kansas Court stated:

"Stripped of all technicalities with reference to the erroneous and inaccurate journal entry presented to the trial judge purporting to cover his ruling of October 16, 1945, and the various subsequent motions, hearings and rulings in the case, the sole and only question presented to us for decision on this appeal is this —could the trial court, at a subsequent term, under the guise of an order nunc pro tunc, change or modify the terms of the decree of divorce with respect to the property rights of the parties?

"Our answer to the question must be in the negative. At the time the divorce was granted the court gave the home and furniture to the plaintiff until the defendant's boy was through high school. Seventeen months later and at a subsequent term the court attempted to change that order by giving plaintiff the home and furniture outright. This court has held in an unbroken line of decisions that as to the jurisdiction of a court to modify or vacate a judgment after the expiration of the term in which it was rendered, there is little room for controversy. A court has power, upon sufficient cause, to modify or vacate its judgment at any time during the term, but it is equally well settled that after the term expires the court is powerless to modify or vacate a judgment that is not void. J. B. Colt Co. v. Clark, 125 Kan. 722, 266 P. 41; Drury v. Drury, 143 Kan. 83, 53 P.2d 792. There are statutory exceptions provided for in G.S.1935, 60–3007, but the judgment in question does not fall within any of them.

"And likewise the fact that the court attempted to modify the original judgment under the guise of an order nunc pro tunc does not change the situation. *A judgment is the final determination of the rights of the parties in an action and is the decision of the court. It may or may not be correctly spread of record in the journal entry. If not, then it may be corrected to speak the truth by an order nunc pro tunc even after the expiration of the term in which it was rendered. But the function of an order nunc pro tunc is not to make an order now for then but to enter now for then an order previously made.* Victory Life Ins. Co. v. Freeman, 145 Kan. 296, 65 P.2d 559; Schneider v. Schneider, 147 Kan. 621, 78 P.2d 16; Bush v. Bush, 158 Kan. 760, 150 P.2d 168." (Emphasis supplied.)

In Ramsey v. Hand, 1959, 185 Kan. 350, 343 P.2d 225, certiorari denied, 362 U.S. 970, 80 S.Ct. 956, 4 L.Ed.2d 901, the Kansas court dealt with the right of the District Court to enter a *nunc pro tunc* order showing what the court actually found in a criminal case; that is, that the court made a holding (not included in the original record) to the effect that the appointment of counsel over the objection of the accused would

not be to his advantage. The court stated at page 233 of 343 P.2d:

"In the instant case the district court of Crawford County had before it the factual question of whether it had found that appointment of counsel would not have been to the appellee's advantage. The court had a right to rely, not only on the transcript, but on its own recollection. The court did so, and determined that the disputed finding was made but was inadvertently omitted from the journal entry. It was thus proper for the court to correct the journal entry *nunc pro tunc* in order that it might accurately reflect what actually transpired in the conviction proceedings. It follows that the jurisdictional requirements of 62–1304, supra, have been fully met.

"It is clear that the filing of a journal entry *nunc pro tunc* has the same effect as if filed in the first instance. The function of a *nunc pro tunc* order is not to make an order now for then, but to enter now for then an order previously made. Bush v. Bush, supra [158 Kan. 760, 150 P.2d 168]."

For additional Kansas cases, see Tafarella v. Hand, 1959, 185 Kan. 613, 347 P. 2d 356, 360–61, certiorari denied, 363 U.S. 807, 80 S.Ct. 1243, 4 L.Ed.2d 1150; Miller v. Hand, 1960, 187 Kan. 352, 356 P.2d 837, 840, certiorari denied, 366 U.S. 938, 81 S.Ct. 1664, 6 L.Ed.2d 849. Miami County National Bank of Paola, Kansas v. Bancroft, 10 Cir., 1941, 121 F.2d 921, cited by the petitioner is not contrary to the holdings cited heretofore.

All courts have the inherent power to enter orders *nunc pro tunc* to show that a thing was done at one time which ought to have been shown at that time. It is an entry now for something previously done so that the record may actually speak the truth. It may not be used for the purpose of wiping out a judgment previously entered by it affecting the rights of a party thereto (here the employee). See, generally, 70 A.L.R.2d 1131 et seq.

The order entered by the District Court of Wyandotte County, Kansas, on February 14, 1964, more than three and one-half years after the death of one of the parties (the employee herein), was not a valid *nunc pro tunc* order and could not have the effect of restoring the temporary alimony order of July 11, 1940, which had been dismissed by judgment on June 28, 1958. It seems clear that the intention of the order *nunc pro tunc* of February 14, 1964, was to nullify the judgment of dismissal entered June 28, 1958. While the first paragraph of the order refers to "correcting" the 1958 judgment of dismissal, the whole tenor of the order, particularly the last paragraph thereof, shows an intention to wipe out the judgment of dismissal as if it had never been entered. Under the circumstances and under the law of Kansas, it was not a valid *nunc pro tunc* order.

■ The petitioner here also urges that the court's order of February 14, 1964, although designated as a *"nunc pro tunc"* order, could be considered as coming within the scope of § 60–260 of the New Kansas Code of Civil Procedure which became effective on January 1, 1964. The Kansas provision is identical with Rule 60 of the Federal Rules of Civil Procedure which provides "Relief from Judgment or Order" with regard to "(a) Clerical Mistakes" and "(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc." Cf. Blankenship v. Royalty Holding Co., 10 Cir., 1953, 202 F.2d 77. The statutory provision relied on is of no assistance to the petitioner.

We conclude that the Railroad Retirement Board was entirely correct in finding that petitioner was not "living with" the employee at the time of his death, July 30, 1960; that the attempted *nunc pro tunc* order of February 14, 1964, was not a valid order and that such order could accordingly have no effect upon the Board's decision of July 18, 1963, which denied recovery to petitioner on the

ground that she was not "living with" the employee at the time of his death.

The petition to review and reverse and the motion to take additional evidence with reference to the *nunc pro tunc* order of February 14, 1964, are denied and the decree of the Railroad Retirement Board is in all things affirmed.