[L.A. No. 29668. In Bank. June 26, 1970.]

MAXINE MARTIN, Plaintiff and Appellant, v.
ROBERT I. MARTIN, Defendant and Respondent.

## COUNSEL

Biafora & Weiner and Michael Korn for Plaintiff and Appellant.

Wells & Herring and William G. Wells for Defendant and Respondent.

## OPINION

**SULLIVAN, J.**—In this case we inquire into the res judicata effect to be accorded by a California court to an order made by a federal referee in bankruptcy. The precise question presented us by this appeal[1] is whether the court below erred in cancelling pursuant to Code of Civil Procedure section 675b[2] a portion of an interlocutory judgment of divorce entered

---

[1]Plaintiff appeals from (a) an "Order Cancelling Judgment of Record" made on September 30, 1966, and (b) a minute order made on November 23, 1966, denying plaintiff's motion to vacate the order of cancellation.

[2]Code of Civil Procedure section 675b as then in effect provided in pertinent part: "At any time after one year has elapsed, since a bankrupt was discharged from his debts, pursuant to the acts of Congress relating to bankruptcy, he may apply, upon proof of his discharge, to the court in which a judgment was rendered against him . . . for an order directing the judgment to be canceled and discharged of record.

in the above-entitled action and in discharging all sums and obligations due from defendant thereunder.

Plaintiff Maxine D. Martin (Maxine) was awarded such interlocutory judgment against defendant Robert J. Martin (Robert) by default in 1963.[3] The interlocutory judgment expressly approved a property settlement agreement entered into by the parties on January 1, 1963, and further provided that "Pursuant Thereto IT IS FURTHER ORDERED that defendant shall pay to plaintiff as consideration for and part of the division of community property the sum of $500.00 per month during the remainder of the natural life of defendant payable $250.00 on the 5th and $250.00 on the 20th of said calendar month beginning January 3, 1963."[4] Robert complied with the order for monthly payments until shortly after entry of the final judgment of divorce on March 23, 1964.

On April 16, 1964, Robert filed in the United States District Court for the Southern (now Central) District of California a voluntary petition in bankruptcy and was adjudicated a bankrupt. The schedules submitted by Robert listed Maxine as his only creditor alleging a debt to her at the time of filing the petition of $344.75 and a continuing obligation to pay her $500 a month for the remainder of her life pursuant to the terms of a property settlement agreement. As already mentioned, this agreement was approved in the interlocutory judgment of divorce. Robert then filed with the referee an application to stay the state court proceedings and to enjoin Maxine from enforcing the obligation by a writ of execution or

If it appears upon the hearing that he has been discharged from the payment of that judgment or the debt upon which such judgment was recovered, an order must be made directing said judgment to be canceled and discharged of record; and thereupon the clerk of said court shall cancel and discharge the same by marking on the docket thereof if there is a docket, otherwise on the register of actions, that the same is canceled and discharged by order of the court, giving the date of entry of the order of discharge."

[3]Maxine's complaint sought a divorce on the ground of extreme cruelty.

[4]The complaint sought court approval of the property settlement agreement but did not pray for alimony, support or maintenance. The property settlement agreement provided in pertinent part:

"8. DIVISION OF COMMUNITY PROPERTY (AND TRANSFER OF SEPARATE PROPERTY):
. . . Husband hereby agrees to pay to the wife *as a further consideration for the transfers made by her* in any provision of this Agreement, and particularly pursuant to the provisions of this Paragraph 8, the sum of $500.00 per month during the remainder of the natural life of the said wife, beginning with the 1st day of January 1963, the said payments to be made as follows: . . .

"9. SUPPORT OF WIFE: It is mutually agreed that *the payments provided for in the preceding paragraph of this Agreement represent a division of community property rights and not support of the wife, and the wife does hereby waive any and all right to support or maintenance from the husband.*" (Italics added.)

The agreement also contained a provision for the mutual release of all rights and claims, except those provided for in the agreement.

other process. Maxine filed an opposition thereto and obtained the issuance against Robert of an order to show cause why his adjudication in bankruptcy should not be vacated and his petition in bankruptcy dismissed. After a hearing the referee denied Robert's application for a stay on the ground of unclean hands[5] and on the alternate ground that Robert's monthly payments obligation to Maxine was in the nature of a liability for alimony due or to become due or for support of wife and therefore was not dischargeable in bankruptcy[6] under section 17(a)(2) of the Bankruptcy Act.[7]

On August 6, 1964, the referee in bankruptcy issued a "Discharge of Bankrupt" discharging Robert from all provable claims against his estate "except such debts as are, by said Act, excepted from the operation of a discharge in bankruptcy." Four days later the referee filed formal findings of fact, conclusions of law and a judgment ordering that the debt due Maxine came within section 17(a) of the Act and was not affected by the discharge. The federal district court affirmed the judgment on the ground of unclean hands.[8]

In the meantime Robert had challenged the validity of the monthly payments obligations in the superior court. Finally he moved to cancel the pertinent part of the interlocutory judgment pursuant to Code of Civil Procedure section 675b. After extensive argument on the issue of the res judicata effect of the referee's determination of nondischargeability, the trial court granted Robert's motion and directed his attorney to prepare the order. Maxine objected to the proposed order and moved for reconsideration. On the following day she moved in the bankruptcy court for correction of the general discharge *nunc pro tunc*.

On September 30, 1966, the superior court heard Maxine's objection to the proposed order. At that time she informed the court below that the

---

[5]The memorandum opinion cited four separate instances of fraud on Robert's part, including false testimony.

[6]The referee, concluding that the monthly payments were intended as alimony or support despite the express waiver in the agreement (see fn. 4, *ante*), determined that "In view of this conclusion, it is not necessary to go into the issues raised by the motion to dismiss."

[7]Section 17(a)(2) (11 U.S.C. § 35(a)(2)), provides in pertinent part: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . (2) are liabilities for . . . alimony due or to become due, or for maintenance or support of wife or child, or for seduction of an unmarried female, or for breach of promise of marriage accompanied by seduction, or for criminal conversation; . . ."

[8]In affirming the referee's judgment (order) the United States district judge stated: "This review being disposed of on the ground that Martin had come to the court of equity with unclean hands, *makes it unnecessary for this court to examine the alternate ground upon which the bankruptcy court based its decision.*" (Italics added.)

motion for correction *nunc pro tunc* would be heard by the referee in bankruptcy on October 3, 1966, and moved that the trial judge defer signing the proposed order until after the hearing of her motion for correction of the discharge. The trial judge signed the order but agreed to hear Maxine's motion for reconsideration on October 6, 1966.

On October 3, 1966, the referee heard and granted Maxine's motion for correction of the discharge *nunc pro tunc* so as to exclude therefrom the monthly payments liability. On October 17, 1966, formal findings of fact, conclusions of law and the amended order of discharge were filed. This order was thereafter affirmed by the United States District Court. An appeal from this judgment is now pending before the United States Court of Appeals for the Ninth Circuit.

On October 6, 1966, Maxine advised the trial court of the referee's action upon her motion for the correction *nunc pro tunc* and requested a continuance of her motion for reconsideration pending the filing of the amended discharge. The record shows that Robert's counsel thereupon stated to the court that the motion had not been granted by the referee and the superior court, over Maxine's attempts to correct this misstatement, denied Maxine's motion for reconsideration. Maxine's motion to vacate the order was denied. (See fn. 1, *ante*.) This appeal followed.

The central question before us is whether the bankruptcy referee's determination that Robert's monthly payments obligation to Maxine was not a dischargeable debt under the Bankruptcy Act was res judicata on that issue in the superior court proceedings. Maxine contends that it was and that the superior court's determination of the question de novo was an impermissible collateral attack upon a judgment of a federal court. Robert urges us to uphold the superior court's action, arguing that the determination made in the bankruptcy proceedings should not be given res judicata effect, since it was neither final nor on the merits.

■ "The doctrine of res judicata precludes parties or their privies from relitigating a cause of action that has been finally determined by a court of competent jurisdiction. Any issue necessarily decided in such litigation is conclusively determined as to the parties or their privies if it is involved in a subsequent lawsuit on a different cause of action." (*Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 810 [122 P.2d 892].) ■ "The normal rules of *res judicata* and collateral estoppel apply to the decisions of bankruptcy courts." (*Katchen* v. *Landy* (1966) 382 U.S. 323, 334 [15 L.Ed.2d 391, 399, 86 S.Ct. 467]; see also *Chicot County Drainage Dist.* v. *Baxter State Bank* (1940) 308 U.S. 371, 376-377 [84 L.Ed. 329, 333-334, 60 S.Ct. 317]; *Stoll* v. *Gottlieb* (1938) 305 U.S. 165, 170-171 [83 L.Ed. 104, 107-108, 59 S.Ct. 134]; *Mueller* v. *Elba*

*Oil Co.* (1942) 21 Cal.2d 188, 205-206 [130 P.2d 961]).[9] Our inquiry therefore is whether the bankruptcy court (the referee) had jurisdiction to make the order which Maxine claims is a conclusive adjudication that Robert's obligation to her was not a dischargeable debt and whether that order, if valid, finally determined the issue.

■ It is beyond dispute that the discharge of bankrupt filed in Robert's bankruptcy proceedings on August 6, 1964, and the order amending said discharge filed on October 17, 1966, and entered *nunc pro tunc* as of August 6, 1964, on which Maxine relies in the instant case were rendered by a "court of competent jurisdiction." (*Bernhard* v. *Bank of America, supra,* 19 Cal.2d 807, 810) having jurisdiction over the subject matter and the parties before it. Indeed, the voluntary appearance of both parties in the proceeding constituted a waiver of any grounds upon which they might otherwise attack the court's judgment for want of in personam jurisdiction. (Rest., Judgments, §§ 18, 19; 1 Witkin, Cal. Procedure (1954) Jurisdiction, § 70; see generally, James, Civil Procedure (1965) § 12.6.) Having submitted themselves to the court's jurisdiction, the parties were therefore bound by any judgment or order which the bankruptcy court had the power to make in the exercise of its jurisdiction. (Cf. *Adam* v. *Saenger* (1938) 303 U.S. 59, 67-68 [82 L.Ed. 649, 654-655, 58 S.Ct. 454].) We must therefore determine whether the bankruptcy court (the referee) had the power to exclude Robert's monthly payments obligation from the discharge as a nondischargeable debt and to effectuate such exclusion by a *nunc pro tunc* order.

The right to a discharge under the Bankruptcy Act and the effect of such discharge are, of course entirely distinct matters. (*Harrison* v. *Donnelly* (8th Cir. 1946) 153 F.2d 588, 589.) ■ As a general practice, bankruptcy courts have merely determined whether the bankrupt is entitled to a discharge and have left "the effect of the discharge upon a particular claim for determination when the discharge is pleaded as a defense to the enforcement of such claim." (*In re Tamburo* (D. Md. 1949) 82 F.Supp. 995, 998; see *Yellow Creek Logging Corp.* v. *Dare* (1963) 216 Cal.App.2d 50, 55 [30 Cal.Rptr. 629].) It is settled, however, that the bankruptcy court may, in its discretion, limit the effect of its discharge of the bankrupt to exclude particular debts from its operation. "Formerly the federal courts held that the bankruptcy court could not determine upon a bankrupt's

---

[9]Under section 39(c). (11 U.S.C. § 67(c)) any person aggrieved by an order of a referee may challenge the order by a writ of review if timely made. "A referee's orders, even when acting in a judicial capacity and as the court, are subject to review by the judge upon timely application to that end; but they are res judicata unless upset on review and no more subject to collateral attack than judgments and decrees generally." (Fns. omitted.) (2 Remington on Bankruptcy (1956) § 619, p. 78; see also 2 Collier on Bankruptcy (14th ed. 1969) § 38.02, pp. 1397-1400.)

application for a dicharge whether the debt due a particular creditor was to be excepted from the operation of the discharge, the only proper issue being the bankrupt's right to a discharge; and that the effect of the discharge, if granted, upon a particular claim is to be determined when the discharge is pleaded or relied upon as a defense to the enforcement of such claim. [Citations.] However, since the decision of the Supreme Court in *Local Loan Co.* v. *Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195, the jurisdiction of a bankruptcy court to limit the effect of its own order of discharge is no longer questioned." (*Harrison* v. *Donnelly, supra,* 153 F.2d 588, 589-590.)[10]

As we have already noted, although on August 6, 1964, the bankruptcy referee issued a routine discharge of bankrupt which was in general terms and not limited as to its effect, on October 17, 1966, the referee made an order correcting such discharge *nunc pro tunc* so as to exclude therefrom Robert's monthly payments obligation to Maxine. The referee made such order on Maxine's motion upon the ground that the general order of discharge had been entered inadvertently "through a clerical mistake by one of the clerks" of the referee.

■ It is now settled that a referee in bankruptcy has the same power over his orders as a district judge has over his, and therefore has the power to amend and correct them. (*In re Pottasch Bros. Co.* (2d Cir. 1935) 79 F.2d 613, 616-617; see also *Mavity* v. *Associates Discount Corp.* (5th Cir. 1963) 320 F.2d 133, 135-136, cert. denied 376 U.S. 920 [11 L.Ed.2d 615, 84 S.Ct. 677]; *In re Schoenburg* (5th Cir. 1960) 279 F.2d 806, 807, cert. denied 364 U.S. 923 [5 L.Ed.2d 262, 81 S.Ct. 290], rehearing denied 364 U.S. 944 [5 L.Ed.2d 376, 81 S.Ct. 463]; *Blankenship* v. *Royalty Holding Co.* (10th Cir. 1953) 202 F.2d 77, 79; *In re California Lumber Corp.* (S.D. Cal. 1964) 227 F.Supp. 63, 67-68.) Under federal law correction of clerical mistakes in orders or judgments of a district judge may be made "at any time." (Rule 60(a), Fed. R. Civ. P. (28 U.S.C. rule 60(a)); 6a Moore's Federal Practice (1966) paras. 60.03[1], p. 4017; 60.08[3], p. 4055; *Bucy* v. *Nevada Constr. Co.* (9th Cir. 1942) 125 F.2d 213, 216-217.)[11] ■ "All courts have the inherent power to enter orders *nunc*

---

[10]Accord *Martin* v. *Rosenbaum* (9th Cir. 1964) 329 F.2d 817, 820; *In re Johnson* (3d Cir. 1963) 323 F.2d 574, 578; *Poolman* v. *Poolman* (8th Cir. 1961) 289 F.2d 332, 334; *Den Haerynck* v. *Thompson* (10th Cir. 1955) 228 F.2d 72, 74; *Rees* v. *Jensen* (9th Cir. 1948) 170 F.2d 348, 352; *In re Baldwin* (D. Neb. 1966) 250 F. Supp. 533, 534; *In re Tamburo, supra,* 82 F.Supp. 995, 998-999, 1001-1002; *In re Buzas* (N.D. Cal. 1944) 58 F.Supp. 717, 718; *In re Walton* (W.D. Mo. 1943) 51 F.Supp. 857, 858-859; *In re Zitzman* (E.D.N.Y. 1942) 46 F.Supp. 314, 315; *Hisey* v. *Lewis-Gale Hospital* (W.D. Va. 1939) 27 F.Supp. 20, 25.

[11]"[I]f a referee is a court at all, there is no warrant for saying because an appeal lies from his orders, that he has not the ancient and elementary power to reconsider

*pro tunc* to show that a thing was done at one time which ought to have been shown at that time. It is an entry now for something previously done so that the record may actually speak the truth." (*Matthies* v. *Railroad Retirement Board* (8th Cir. 1965) 341 F.2d 243, 248; *Schwartz* v. *Pattiz* (E.D. Mo. 1967) 41 F.R.D. 456, 458, affd. 386 F.2d 300.)[12]

█ It is clear then that the bankruptcy court had the power to limit the effect of its discharge by excluding therefrom Robert's obligation to Maxine and to enter a *nunc pro tunc* order correcting the discharge "so that the record may actually speak the truth." (*Matthies* v. *Railroad Retirement Board, supra,* 341 F.2d 243, 248.)

█ We now turn to consider whether the discharge of bankrupt as amended by the *nunc pro tunc* order excluding Robert's obligation from its effect constituted a final judgment on the merits. On this question of finality federal law is controlling. █ A federal court judgment has the same effect in the courts of this state as it would in a federal court. (*In re Bailleaux* (1956) 47 Cal.2d 258, 260-261 [302 P.2d 801], cert. denied 353 U.S. 957 [1 L.Ed.2d 908, 77 S.Ct. 863]; *United States Fire Ins. Co.* v. *Johansen* (1969) 270 Cal.App.2d 824, 834 [76 Cal.Rptr. 174, 780]; *Bank of America* v. *McLaughlin etc. Co.* (1940) 40 Cal.App.2d 620, 626-627 [105 P.2d 607], cert. denied 313 U.S. 571 [85 L.Ed. 1529, 61 S.Ct. 958]; see Code Civ. Proc., § 1908; *Swaffield* v. *Universal Ecsco Corp.,* 271 Cal.App.2d 147, 159 [76 Cal.Rptr. 680]; 3 Freeman on Judgments (5th ed. 1925), § 1470, pp. 3018-3019.)[13] The federal rule is that a judgment or order, once rendered, is final for purposes of res judicata until reversed on appeal or modified or set aside in the court of rendition. (*Stoll* v. *Gottlieb, supra,* 305 U.S. 165, 170 [83 L.Ed. 104, 107-

---

those orders, nor the faintest reason why he should not do so." (*In re Pottasch Bros. Co., supra,* 79 F.2d 613, 616, per L. Hand, Judge.)

[12]In *Estate of Eckstrom* (1960) 54 Cal.2d 540, 544 [7 Cal.Rptr. 124, 354 P.2d 652], we quoted from *Smith* v. *Smith* (1952) 115 Cal.App.2d 92, 99-100 [251 P.2d 720], as follows: " 'The function of a *nunc pro tunc* order is merely to correct the record of the judgment and not to alter the judgment actually rendered—not to make an order now for then, but to enter now for then an order previously made. The question presented to the court on a hearing of a motion for a *nunc pro tunc* order is: What order was in fact made at the time by the trial judge?' "

[13]This is compatible with the general principle that the validity and effect of a judgment of a sister state are governed by the law of the state where the judgment was rendered. (*Aldrich* v. *Aldrich* (1963) 378 U.S. 540, 543 [12 L.Ed.2d 1020, 1023, 84 S.Ct. 1687]; *Gagnon Co.* v. *Nevada Desert Inn* (1955) 45 Cal.2d 448, 453-454 [289 P.2d 466]; *Farley* v. *Farley* (1964) 227 Cal.App.2d 1, 6 [38 Cal.Rptr. 357], cert. denied 379 U.S. 945 [13 L.Ed.2d 543, 85 S.Ct. 438]; *Smith* v. *Smith, supra,* 115 Cal.App.2d 92, 99; *Rall* v. *Lovell* (1951) 105 Cal.App.2d 507, 510 [233 P.2d 681]; *Gilmer* v. *Spitalny* (1948) 84 Cal.App.2d 39, 44 [189 P.2d 744]; Ehrenzweig on Conflict of Laws (1962), § 66, at p. 233; Note, *The Finality of Judgments in the Conflict of Laws* (1941) 41 Colum.L.Rev. 878, 878-879.)

108]; *Mueller* v. *Elba Oil Co., supra,* 21 Cal.2d 188, 205; *Swaffield* v. *Universal Ecsco Corp., supra,* 271 Cal.App.2d 147, 159-160, and cases there cited.) ■■■ Under the applicable federal law the amended order of discharge is therefore final.

It is also clear that the amended order is a determination on the merits. In the initial proceeding the referee considered the issues raised by both orders to show cause, including Robert's right to an adjudication in bankruptcy. In determining the issue of Robert's entitlement to a discharge the referee intended to treat as controlling the referee's earlier determination that the monthly payments obligation was not a dischargeable debt.[14] By amendment *nunc pro tunc* the referee succeeded in making his initial determination of nondischargeability controlling. Any question as to the propriety of such treatment was necessarily before the referee when Robert opposed Maxine's motion for correction *nunc pro tunc* and before the district court in its review of the order of correction *nunc pro tunc.* ■■■ Under federal law Robert's lack of entitlement to a discharge, the substantive question in this case, has been finally determined. (*Stoll* v. *Gottlieb, supra,* 305 U.S. 165, 170; *Mueller* v. *Elba Oil Co., supra,* 21 Cal.2d 188, 205.) Such order can be, as it has been here, challenged solely by way of direct attack in the federal court; it may not be collaterally attacked in the instant state proceeding. (*Mueller* v. *Elba Oil Co., supra,* 21 Cal.2d 188, 206.)

Robert argues that the judgment entered by the referee on August 10, 1964 (four days after the discharge of bankrupt) is not entitled to res judicata effect. It will be recalled that after a hearing on Robert's application for a stay of the state court proceedings and Maxine's contemporaneous motion that Robert's petition in bankruptcy be dismissed, the referee on August 10, 1964, filed findings of fact, conclusions of law and a judgment ordering that Robert's debt to Maxine was not affected by the discharge previously filed on August 6, 1964. (See fns. 5, 6 and 7, *ante,* and accompanying text.) It will also be recalled that on review, the United States District Court affirmed the judgment of August 14, 1964, on the ground that Robert had come into court with unclean hands, deeming it unnecessary to examine the alternate ground of the bankruptcy court's decision, namely the nondischargeability of Robert's debt to Maxine. (See fn. 8, *ante,* and accompanying text.) Robert's proposition, in

---

[14]On this point the referee stated: "There is an error in the Court record in that the discharge of the bankrupt filed on August 6, 1964, does not correctly set forth the findings that prior to that date had been made in open court and which were four days later reduced to writing in the findings of fact, conclusions of law and the order entered on August 10, 1964, . . . The Court will, therefore, amend the order of discharge so that the order sets forth the provisions of the order of August 10, 1964, namely, exempting this one debt from the provisions of the discharge."

support of which he cites a number of authorities, is that a judgment is conclusive only as to the first ground of decision where on appeal the higher court affirms solely on that ground and refuses to reach the alternate ground of decision.

We need not consider this argument or probe the effect of the judgment of August 10, 1964, since it is obvious that Maxine's claim of res judicata can be properly grounded on the bankruptcy court's order filed October 17, 1966, amending and correcting the discharge of bankrupt. It was there ordered "that the Order of Discharge dated August 6, 1964, be amended and corrected to limit and qualify said order of discharge *to exclude therefrom the discharge of the debt due from the bankrupt to Maxine D. Martin,* so that said order of discharge conforms to the order of this court of August 10, 1964." (Italics added.) As previously stated, the judgment of August 10, 1964, ordered, among other things, that the above-mentioned debt "comes within section 17(2) of the Bankruptcy Act . . . and is not affected by the discharge of the bankrupt herein, and is not a dischargeable debt." On review, the above order of October 17, 1966, excluding such debt from the discharge, was unconditionally affirmed by the United States District Court on December 7, 1967. Although counsel have advised us that Robert has taken an appeal from the district court's order to the United States Court of Appeals, on the authorities already discussed, this order is final for the purposes of res judicata until reversed. (See *Stoll* v. *Gottlieb, supra,* 305 U.S. 165, 170, and other cases cited *supra.*)

Robert also contends that any determination made to the effect that the debt in question was not dischargeable was merely interlocutory in nature and not res judicata. What we have just said in reference to the order amending and correcting the discharge and its unqualified affirmance by the district court on December 7, 1967, fully disposes of this contention.

Finally, Robert urges that the bankruptcy court erred in interpreting the property settlement agreement as providing for the payment of alimony and support. This affords no escape for Robert, for even if we assume that the court erred in its interpretation of the agreement, "An erroneous judgment is as conclusive as a correct one." (*Panos* v. *Great Western Packing Co.* (1943) 21 Cal.2d 636, 640 [134 P.2d 242].)

To summarize, we said in *Bernhard* v. *Bank of America, supra,* 19 Cal.2d 807, 813 that "[i]n determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the

plea is asserted a party or in privity with a party to the prior adjudication?" These requirements have been met in the instant case. There is of course no dispute that Maxine and Robert, the parties to the instant state court proceedings, were parties in the previous federal court proceeding. The issue decided in the prior federal court proceeding—namely whether Robert's monthly payments obligation to Maxine was a dischargeable debt under the Bankruptcy Act—was identical with the issue presented to the superior court in this proceeding. As we have explained, the adjudication of this issue in the federal court was a final judgment on the merits. It was therefore res judicata on the issue in the superior court proceedings.

In view of our conclusion, we need not consider Maxine's remaining contentions.

The orders appealed from are reversed.

Burke, Acting C. J., McComb, J., Tobriner, J., and Mosk, J., concurred.

Respondent's petition for a rehearing was denied August 5, 1970.